473 So.2d 84 (1985)
STATE of Louisiana
v.
Ricardo Villa SALGADO a/k/a Oscar Campo.
No. 84-KA-656.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 1985.
Rehearing Denied August 16, 1985.
*86 Martin E. Regan, Jr., New Orleans, for appellant.
John M. Mamoulides, James Maxwell, Dorothy A. Pendergast, Gretna, for appellee.
Before BOUTALL, C.J., and CHEHARDY and GRISBAUM, JJ.
GRISBAUM, Judge.
The defendant, Oscar Campo, was charged by bill of information on April 15, 1983 with possession of over 200 grams of cocaine, in violation of Louisiana Revised Statute 40:967. The defendant was arraigned on May 11, 1983 and, represented by retained counsel, pled not guilty. A motion to suppress was heard and denied.
The state amended the bill of information on October 5, 1983 charging possession of over 400 grams of cocaine, and the defendant, represented by counsel, was subsequently arraigned on the amended charge. On November 14, 1983, the state filed a notice of its intention to use and introduce several statements made by the defendant to Customs and Immigration personnel. The defense counsel filed a Motion to Suppress the Statements, and in particular a statement made by the defendant to an immigrations official on July 8, 1983. The defendant's motion was heard, submitted, and denied on November 15, 1983. A trial by jury commenced immediately thereafter, and on the following day, the jury returned a verdict of guilty as charged. The defendant filed a motion for a new trial which was denied, and the defendant was thereafter sentenced to the minimum term for a violation of Louisiana Revised Statute 40:967 F(3), which is 15 years at hard labor and a $250,000 fine. The defendant was ordered to pay, in addition, court costs and fees totaling $127.50. From this conviction and sentence, the defendant appeals. We set aside in part and affirm.
We are called upon to determine the merit of eight assignments of error which have been designated by the defendant as follows:
(1) The court erred in denying the defendant's motion to suppress an inculpatory statement made to federal investigative authorities;
(2) The court erred in denying the defendant's motion for a continuance in order that a material defense witness' presence for trial court be arranged;
(3) The court erred in overruling the defendant's objection (to remarks by a state's witness);
(4) The court erred in denying the defendant the opportunity to re-cross examine a state's witness;

*87 (5) The court erred in denying the defendant's objection (to revelation of the drugs' street value);
(6) The court erred in denying the defendant's objection (to a comment by the trial court);
(7) The court erred in denying the defendant's objection (to a comment by the trial court);
(8) The court erred in denying the defendant's objection. (This assignment was abandoned on appeal.)
On February 18, 1983, the defendant arrived at New Orleans International Airport via a SAHSA flight from Honduras, Guatemala and Belise. Marvin Hughes, an employee of the Immigration and Naturalization Service, was checking passports of disembarking passengers when presented with a Columbian passport by one identifying himself as Oscar Campo. Campo told Hughes he was entering the United States to buy telephone parts. Hughes testified at trial for the state that because of past problems with drugs smuggled in on Columbian passports, he decided to call Betty Miller, a secondary immigration inspector, to his booth. Miller asked Campo what telephone parts he intended to buy. Campo could not name the part, but stated he had one in his luggage. Hughes brought Campo to the baggage retrieval area where Campo waited in line to have his suitcase inspected. Gloria Johnson, a customs inspector, asked Campo some preliminary questions and then requested to see his passport. Ms. Johnson testified she observed that the type of luggage Campo was carrying fit the description of luggage customarily used by smugglers and referred him to her supervisor, Mr. Jeff Vaughan, Chief Customs Inspector. Vaughan authorized a search of Campo's suitcase by Customs Inspector Russell Favorite. Favorite discovered that the suitcase lining had been altered and was concealing six packages of cocaine. He asked Campo whether the suitcase was his, and Campo acknowledged that it was and presented the claim ticket for it. Favorite noted that the handle had been rebolted on the suitcase with a small bolt and nut, which according to Favorite, was a telltale sign it had been tampered with. After pulling the lining from the edge of the suitcase, he noted that part of the suitcase was made of formica, which, Favorite testified, is not "normal." He emptied the suitcase and took it into an examination room where he drilled into the formica. Upon extracting the drill bit, he noticed a white, powdery substance that later tested positive for cocaine. He advised the defendant of his findings, arrested him, and advised him of his rights, both in English and Spanish.
Inspector Vaughan asked the defendant where he had obtained the suitcase, and in response the defendant stated that a man named Rodrigo had asked him if he wanted to use the suitcase because the defendant's clothes were contained in a bag. The defendant was to return the suitcase in either Guatemala or New Orleans. Vaughan testified he checked the flight to see if there had been anyone named Rodrigo aboard, and the defendant agreed to identify Rodrigo at the airport. He was taken outside to the waiting area for approximately 30 minutes, and when Rodrigo failed to appear, the defendant was taken away. In addition, Favorite testified that Campo was given an opportunity to meet Rodrigo in the airport, but that no one appeared.
Campo was initially released into federal custody, but upon advising authorities that his real name was Guillermo Villa Salgado and that he was only 17 years old, was turned over to the Jefferson Parish authorities. It was subsequently verified that the defendant is in fact Ricardo Villa Salgado, 22 years of age and a native of Columbia, who lived in Miami from 1980 through 1982.
The defendant took the stand and testified that he was from a small city in Columbia, South America, where his family still resides. In 1980, he came to the United States and worked in an automobile body shop in Miami, Florida. He obtained a GED from the American Patriot High School and applied to attend the Miami Community College. After 30 months in *88 the United States, he made his first trip home to Columbia. Twenty days later, when he tried to return, he was denied entry into the United States and sent back to Columbia. He explained that his Green Card, which he had bought for $2500, was invalid, and that upon arriving in Columbia, his valid Columbian passport had been confiscated by police authorities. His parents attempted to convince him to remain in Columbia, but instead he contacted an individual named Rodrigo Morales who helped him obtain another Columbian passport. The defendant further stated he paid Morales $2000 for the passport, and the defendant's brother, Hernando Villa, loaned him a portion of this amount. With regard to the incidents leading up to his arrest, the defendant's testimony is as follows: The defendant met Morales in Pereira, Columbia on February 11, 1983. They traveled together to Santander, Columbia and stayed there briefly. Morales sold him a passport and suggested they travel together in order that he, Morales, could help the defendant in the event the defendant "got into any trouble" with the passport. On the way to the United States, the two stopped in Guatemala. Prior to leaving Santander, the defendant combined his clothing in a third suitcase belonging to Rodrigo Morales. The handle had been broken prior to the departure from Santander, and the defendant acknowledged fixing the handle himself but stated that he did not notice anything unusual about it. Upon arriving in New Orleans, the defendant advised government authorities who questioned him at the airport that he had come to the United States on business and to buy telephone parts. He said that he had in his suitcase a telephone part similar to the kind he was to purchase. When the defendant went to get the part, he saw Morales, who, he testified, was already in the customs line. After he returned with the telephone part, he showed it to the authorities at which point they took the suitcase away from him and placed him in a small room where he was questioned about his brother's telephone company. Shortly thereafter he was placed under arrest at which time he explained that the suitcase belonged to Morales whom he was expecting to meet in the airport. He testified he did not know what name Morales was traveling under other than Rodrigo Morales, but was aware that he had been carrying three passports. He stated he had met Morales in the bodyshop in Miami where Morales had fixed his automobile and knew Morales to be a businessman who bought washers and dryers in the United States for export to Columbia. He testified Rodrigo was in his 50's and a friend of his family and that he had had no reason, prior to this incident, to suspect that Rodrigo would "do this" to him.
Initially, the defendant alleges an inculpatory statement made by him to federal immigration investigative authorities is inadmissible because the warnings and advisements given to him by Officer Johnston regarding his right to counsel and his privilege against self-incrimination were "absolutely meaningless." We find, however, the trial court did not err in denying the defendant's motion to suppress the inculpatory statement made to Officer Johnston.
The record reflects the state called Johnston in its case-in-chief, eliciting testimony concerning the defendant's statement, and upon being satisfied that the defendant had voluntarily and intelligently waived his constitutional rights, allowed the written statement to be introduced into evidence. The record reflects that on July 8, 1983, James Johnston, of the Immigration and Naturalization Service visited the defendant in the Jefferson Parish Correctional Center. The defendant had been incarcerated in the Jefferson Parish Correctional Center for several months on the drug charges and had appeared before the court several times for pre-trial matters while represented by counsel; however, the defense counsel was not notified that Johnston was going to "interview" the defendant. Johnston informed the defendant that he wished to question him concerning his immigration status. Johnston read the defendant his Miranda rights in Spanish, and the defendant signed a waiver form, which was also *89 in Spanish. Johnston then took a statement from the defendant in which the defendant claimed that he was 17 years old and that a family friend named Rodrigo Morales had given him the passport. This last bit of information was particularly important in light of the defendant's later claim at trial that he had paid Morales $2000 for the passport and had been unknowingly duped by Morales into carrying the drugs.
The defense counsel argues that Johnston should not have interviewed the defendant without first speaking to the defense counsel and further argues that, as the defendant was led to believe any information he gave to Johnston would be used only in immigration matters, use of the statement in the drug trial was improper "trickery," and the statement should be suppressed. In denying the Motion to Suppress the trial judge stated, "as far as I am concerned, this was used for immigration purposes. It is inculpatory ... I think he waived his rights knowingly and intelligently."
The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda applies to statements taken during custodial interrogations, which the United States Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra at 444, 86 S.Ct. at 1612. The accused must be advised of, and subsequently waive his right to remain silent and his right to the presence of an attorney. See also State v. Germain, 433 So.2d 110 (La.1983); State v. Harper, 430 So.2d 627 (La.1983). When an accused asserts his right to counsel the police must scrupulously honor the invocation of the right and interrogation must cease. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
Our Louisiana Supreme Court has held that the question of whether an accused's rights are "scrupulously honored" in a "further questioning" or "subsequent interrogation" depends on the totality of the circumstances involved and the particular facts of each case. Factors to be considered are: (1) who initiates the further questioning; (2) the time delay between the original request and subsequent interrogation; (3) whether Miranda warnings were given before each interrogation; (4) whether waiver of rights forms were signed; and (5) whether or not pressures were asserted on the accused by the police between the time he invoked his right to counsel and the subsequent interrogation. State v. Harper, supra; State v. Shea, 421 So.2d 200 at 209 (La.1982); State v. McCarty, 421 So.2d 213 (La.1982).
At trial, Johnston acknowledged that talking to the defendant about his criminal case without first notifying his defense counsel "would have been wrong." The trial court found that Johnston was truthful in testifying that he approached the defendant for the purpose of gathering information solely for immigration purposes, and we cannot say the trial court erred in its evaluation of Johnston's credibility. Johnston stated, at trial, "I remembered specifically telling him I was not interested in his criminal case and I didn't want to hear anything about it." Johnston further elaborated: "I didn't want to get involved ... in the middle of his drug case... on the chance I would hear something..." The state thus established that Johnston did not "interrogate" the defendant on the drug charge and that no pressure had been placed on the accused.
Furthermore, it is clear from the record facts that this situation does not involve a "further questioning" situation or a subsequent interrogation. Johnston's interview was an initial questioning by an immigration officer. Johnston informed the defendant of his Miranda rights, and the defendant executed a written waiver. As *90 the defendant waived his right to counsel on the immigration matter, the statement taken met Miranda requirements. See State v. Harriam, 434 So.2d 551 (La.App. 2d Cir.1983).
We now turn to a consideration of the defendant's Sixth Amendment right to counsel. At the time he was "interviewed" by Johnston, a bill of information had been filed, the defendant was arraigned on the drug charge, and the defendant was awaiting trial on the charge. Furthermore, the defendant had exercised that right by retaining an attorney to represent him. The question presented is whether the conduct of Johnston was violative of the defendant's right to counsel and whether the defendant executed a valid waiver of that right before speaking to Johnston. Clearly, the defendant was entitled as of right to the assistance of counsel. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The defendant had exercised that right by retaining counsel to represent him. As with waiver of Miranda rights, a waiver of the Sixth Amendment right to counsel must be "a knowing and intelligent relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
We find the state demonstrated that the defendant knowingly and intelligently relinquished his right to counsel prior to speaking with Johnston. As stated previously, we find the record facts indicate that this situation did not involve a "further questioning" situation or a subsequent interrogation, but rather Johnston's interview with the defendant was an initial questioning by an immigration officer regarding immigration matters. The record reflects that no pressures were asserted on the accused by the police between the time he retained counsel and the subsequent interrogation, and no pressures were asserted on the accused during the interrogation by Johnston. The defendant was read his Miranda rights prior to the questioning by the immigration officer, and he knowingly and intelligently waived his right to counsel at that time.
Hoffa v. U.S., 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) makes clear that the prosecution may elicit statements in counsel's absence respecting a different, unindicted offense and use them in a separate trial for that crime. Furthermore, the prosecution should not be precluded from introducing such statements at a trial on both charges so long as the second investigation was made in good faith. U.S. v. Darwin, 757 F.2d 1193, CA 11 (1985). As previously stated herein, the state demonstrated that Johnston acted in good faith. Therefore, assignment of error one has no merit.
Regarding the second assignment of error raised by the defense as to whether the trial court erred in denying its motion for a continuance, the defense counsel contends that prior to trial he renewed his request for a continuance in order that he might secure the presence of the defendant's brother, who lives in Columbia, to testify.
The record reflects the trial court refused this motion for a continuance but granted two previous motions for continuances, one on September 12, 1983 and one on October 11, 1983.
Louisiana Code of Criminal Procedure article 707 provides:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
After a careful review of the record, we see no evidence that the defense counsel submitted a written motion for a continuance. Our jurisprudence has consistently held that denial of an oral motion *91 for a continuance leaves nothing for us to review. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Jones, 340 So.2d 563 (La.1976); State v. Bullock, 329 So.2d 733 (La.1976). Accordingly, this assignment of error has no merit.
We now turn to the third assignment of error. The record reflects that during its case-in-chief, the state called Betty Miller, who worked for the United States Immigration Service, as a witness. Ms. Miller explained the events leading to the defendant's arrest and stated:
He referred him to me as he came in on a Columbian passport. At this time, we were told all Columbian ... well, anyone coming in on a Columbian passport was to be checked because we had a lot of trouble with drugs coming in on Columbian passports.
Defense counsel contends that the comment was highly prejudicial and lacks sufficient probative value and relevancy to justify its admission, as it was not intended to prove or disprove a material fact at issue or demonstrate that the defendant committed an offense.
Louisiana Code of Criminal Procedure article 841 provides in pertinent part:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor. (Emphasis added)
We note the defense counsel did not state the grounds for his objection to Miller's testimony. The Louisiana Supreme Court has stated that an assignment of error reserved to a trial court ruling where there is no basis for the objection stated and no error pointed out presents nothing for us to review. State v. Williams, 374 So.2d 1215 (La.1979); State v. Powell, 325 So.2d 791 (La.1976). Accordingly, this assignment of error has no merit.
With regard to the fourth assignment of error, the defense contends the trial court erred in denying the defendant the opportunity to re-cross examine a state's witness on matters raised by the state for the first time on redirect. The defense contends the denial of an opportunity to re-cross examine the witness regarding "the newly raised issue of the defendant's alleged stated friendship with Rodrigo ..." effectively denied the defendant his right of confrontation fundamental to a fair trial.
Louisiana Revised Statute 15:281 provides in pertinent part:
The re-direct examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to re-cross on the new matter brought on the re-direct.
The record reflects the nature of the relationship existing between the defendant and an individual named Rodrigo had been raised in the witness' testimony prior to the redirect examination. Accordingly, we find the trial court did not abuse its discretion in disallowing the re-cross by the defense counsel on this point. Therefore, we find this assignment of error has no merit.
In relation to his fifth assignment of error, the defendant contends that Agent Woodfork's testimony regarding the street value of the drugs seized at the time of the defendant's arrest was irrelevant, immaterial, and highly prejudicial in light of the fact that the defendant was charged with possession of cocaine, not possession with intent to distribute.
We are guided by our jurisprudence which clearly states that a trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. *92 West, 419 So.2d 868 (La.1982); State v. Freeman, 447 So.2d 1145 (La.App. 3d Cir. 1984). Additionally, the Louisiana Supreme Court has held that if evidence is relevant and otherwise admissible, the fact that it may be prejudicial does not bar its admission. State v. Smith, 418 So.2d 515 (La.1982); State v. Chaney, 423 So.2d 1092 (La.1982).
The record shows that out of the presence of the jury, the trial judge conducted an inquiry as to what Agent Woodfork's testimony would cover. The prosecutor stated that Woodfork would report the street value of the drugs and that such testimony would be relevant in showing that the defendant knowingly carried the drugs into the country. The prosecutor's theory was that no one would have planted one million dollars worth of drugs on the defendant without the defendant's knowledge, thereby risking the loss of the tremendously valuable property. The record reflects the trial judge allowed Woodfork to testify for this "limited purpose."
We find that Agent Woodfork's testimony, admitted for the limited purpose of circumstantially establishing that the defendant knew he was carrying drugs, was relevant. We also find that the probative value of Woodfork's testimony outweighs the possibility of a prejudicial effect on the jury.
Finally, we consider the contention raised by the defense that two separate comments made by the trial judge in the presence of the jury were improper and highly prejudicial to the defendant. Louisiana Code of Criminal Procedure article 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
Our jurisprudence in State v. Williams, 375 So.2d 1379 (La.1979), sets out the purpose of article 772 as follows:
The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. (Footnotes omitted) State v. Hodgeson, 305 So.2d 421 (La. 1974) and decisions there cited. Thus, if the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and requires reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957). Likewise, any comment or question by the judge expressing or implying his opinion with regard to a material issue is reversible. State v. Hodgeson, 305 So.2d 421, 421 (La.1974) (summarizing decisions).
Williams, supra at 1381.
The record shows that the trial judge, at the time the trial was recessed for lunch on November 16, 1983, was informing the jury that the state had put on its evidence and that the defense had the option of calling the defendant to the stand. Thereafter, the court stated, "I don't know whether Mr. Guillermo, the young man will take the stand, or whatever his name is, but we will break for lunch at this time." After the jury left the courtroom, the defense counsel objected to the court's reference to the defendant as "whatever your name was" and stated that, "because we never said it was Guillermo, I think it was prejudicial." The court overruled the objection, noting that the defendant was known to have used three different names and the court did not know what his real name was. He was arrested under the name of Oscar Campo, transferred to the Jefferson Parish Correctional Center under the name of Guillermo Salgado, and, in defense counsel's opening statement, was identified as Ricardo Villas Salgado. Additionally, the bill of information indicated that the defendant's name was Oscar Campo a/k/a Guillermo Salgado. The first five state witnesses stated they knew the defendant as Oscar Campo. Thereafter, a later witness stated he had been informed by the defendant that his real name was Guillermo Salgado. Accordingly, it is quite *93 understandable that the trial judge was confused as to the defendant's real name, and we do not believe the trial judge intended to, nor did he in fact, comment upon the defendant's character or express an opinion as to the defendant's guilt or innocence. The defendant's testimony, which cleared the confusion regarding his name, was not elicited until after the judge's comment.
The second statement objected to by defense counsel is one made by the court as the jurors were leaving the courtroom for lunch. The trial court stated, "It is sickening in here." One of the jurors had stated to the court that he was ill, and apparently this comment was in response to the juror's remark. The defense counsel stated, as grounds for his objections, that he believed this remark had an adverse effect on the defendant, indicating that the trial was "making the trial judge sick." It is unclear from the record which jurors, if any, were present and/or heard the trial judge's comment. The record reflects the following colloquy between the judge and defense counsel:
DEFENSE COUNSEL:
If we have a sick juror, I would like to know what the problem was.
THE COURT:
Mr. Hungerman said he was ill and I was trying to say that when you interrupted him. Mr. Hungerman said he had been ill two or three days last week and he was feeling a little queasy and a little dizzy. I suggested he might stay as long as he felt he could perform his duties as a juror. If he felt like he couldn't concentrate, to give me notice immediately and I would release him because we have an alternate juror.
DEFENSE COUNSEL:
Your comment after that by saying it is sickening in here, I think this has an adverse effect on the defendant.
THE COURT:
I don't believe. I have been very careful to admonish this jury with regard to everything the Court has said.
DEFENSE COUNSEL:
I think, perhaps, it has an adverse effect on the defendant, indicating that it is making him sick.
THE COURT:
It may be adverse to the State.
MR. REGAN:
I took it to be prejudicial to my client.
THE COURT:
We will note that in the record for you, Mr. Regan.
Reviewing the record, it is not clear from the colloquy whether the trial judge's comment was in the presence of that one juror alone or in the presence of all jurors. Although we could speculate as to the rationale for the particular comment, we cannot say that the comment, in light of its context and in viewing the totality of the circumstances and the facts surrounding the comment, expressed or implied the trial judge's opinion as to the defendant's guilt or innocence or any material issue in dispute. Nor can we say that the trial judge was intending to give an opinion as to what had been proved or not proved at trial that morning.
Although we believe a trial judge must take very serious care to avoid remarks which may be mistaken for opinion, we must conclude in this case that the trial judge's remarks did not violate the purpose of article 772 and could not have prejudiced the jury. Thus, the assignment of error has no merit.
Other errors have been raised by the defendant which we find have no merit.
Finally, according to Louisiana Code of Criminal Procedure article 902, errors which are patent on the face of the record are to be reviewed, even if they are not designated as error in the trial court record. Our review of the record reveals the trial court sentenced the defendant immediately after its denial of the motion for a new trial in violation of Louisiana Code of Criminal Procedure article 873, which provides:
If a defendant is convicted of a felony, at least three days shall elapse between *94 conviction and sentence. If a motion for a new trial, or an arrest of judgment, is filed, sentence shall not be imposed until at least 24 hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
The record reflects the defendant's motion for a new trial was denied on January 25, 1984. Immediately thereafter, the trial judge sentenced the defendant. Although the record does not reflect the defendant waiving his 24-hour delay period for sentencing, our jurisprudence has held that the defendant is entitled to resentencing only upon a showing of prejudice as a result of a failure to abide by the statutory delay. State v. Keleman, 444 So.2d 1328 (La.App. 2d Cir.1984); State v. Gaspard, 441 So.2d 812 (La.App. 3d Cir.1983). The defense does not allege it was prejudiced by the failure of the trial judge to comply with article 873, nor is there any evidence which would demonstrate the defendant was prejudiced in any way. Moreover, the record reflects the defendant was sentenced over two months after his conviction.
We also recognize the trial judge sentenced the defendant to 15 years at hard labor, which sentence is illegally lenient in that Louisiana Revised Statute 40:967 G(1) provides that a defendant shall be sentenced without benefit of probation or parole. Louisiana Code of Criminal Procedure article 882 provides:
An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) in an appealable case by appeal; or (2) in an unappealable case by writs of certiorari and prohibition.
Because the state has not appealed the sentence, we uphold it in its lenient form, pending an application by the state to have it corrected.
The trial judge fined the defendant $250,000, the minimum amount of the mandatory fine he was required to impose under Louisiana Revised Statute 40:967 F(3). However, in State v. LeCompte, 406 So.2d 1300 (La.1981), our supreme court held that a portion of the penal provisions of Revised Statute 40:967(E) and (F) governing possession of large amounts of marijuana and cocaine is unconstitutional insofar as it provides for a minimum fine with no maximum fine.
A portion of the statute, by Act 800 of 1981, has been reenacted and placed under Revised Statute 40:966 relative to marijuana. However, that part of the statute which is applicable to cocaine was left intact as to Subsection F. Since Subsection F has been declared unconstitutional by LeCompte as to the fine imposable, we must delete from the sentence and set aside the fine of $250,000.
For the reasons assigned, the conviction by the trial court is affirmed. It is ordered, adjudged and decreed that the $250,000 fine imposed by the trial court is hereby deleted from the sentence and set aside. In all other respects, the sentence is affirmed.
SET ASIDE IN PART AND AFFIRMED.