480 So.2d 396 (1985)
STATE of Louisiana
v.
Earl HUFFMAN.
No. KA-2673.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1985.
*397 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Dist. Atty., Harry F. Connick, Dist. Atty., Maria M. Lazarte, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before REDMANN, C.J., and GULOTTA and GARRISON, JJ.
GARRISON, Judge.
The defendant, Earl Huffman, was charged by bill of information with aggravated battery in violation of LSA-R.S. 14:34.[1] After waiving his right to trial by jury, the defendant was found guilty as charged by the trial judge. The defendant's motion for new trial was denied on January 20, 1984. On that same date, the defendant was sentenced to ten years at hard labor with credit for time served and ordered to pay seventy-four ($74.00) dollars in court costs or spend an additional thirty days in jail. On March 1, 1984, the court granted a defense pro se motion to proceed In Forma Pauperis. The court later allowed the defendant's original attorney to withdraw from the case and appointed the Office of the Indigent Defender to represent the defendant on appeal. Defendant now appeals his conviction and sentence.
On December 11, 1982 at approximately 9:30 p.m., Officer Debbie Prevost of the New Orleans Police Department responded to a call at the home of Dolores Sullivan. Upon her arrival, Officer Prevost discovered that Sullivan had received several stab wounds in her back. Officer Prevost found a broken knife and a blood-stained robe in the victim's apartment.
Dolores Sullivan testified that the defendant and his step-son, David Landauer, arrived at her City Park Avenue apartment on the evening of December 11, 1982. Sullivan, an acquaintance of the defendant, stated that the defendant offered to sell marijuana to her and that she told the defendant to go get the marijuana out of his car. She testified that when the defendant returned from his car, he had a knife and began stabbing her in her back and shoulder. According to Sullivan, the defendant stopped stabbing her only when the knife broke in her shoulder. Sullivan stated that the defendant told her that the reason for the stabbing was that she had allegedly told the defendant's brother-in-law that she had seen the defendant steal his stereo. After the defendant stabbed Sullivan approximately four times, he then put his arm around her and threatened to break her neck. She finally broke away from the defendant and ran out into the street. The defendant followed her and punched her in the mouth. The defendant and Landauer then ran away.
David Landauer denied Sullivan's story and testified that he and the defendant went to Sullivan's apartment that evening *398 to ask her if she knew the whereabouts of the defendant's brother-in-law. According to Landauer, Sullivan replied that she did not but that they could come into her apartment while she made phone calls in an attempt to locate the defendant's brother-in-law. Landauer claims that Sullivan went into another room to make the phone calls, returned with a knife in her hand and began attacking the defendant. He also testified that the defendant struggled with Sullivan until Sullivan ran out of the house. Landauer and the defendant then allegedly ran after Sullivan in an attempt to calm her down. Landauer stated that Sullivan appeared to be drunk that evening. He also testified that the defendant did not offer to sell marijuana to Sullivan and that he never saw the defendant stab Sullivan.
The defendant essentially reiterated Landauer's version of the story and added that Sullivan asked him where she could purchase the drug "dilaudid" and that he replied that he did not know. The defendant also testified that Sullivan appeared to be "loaded" that evening and that if Sullivan was stabbed, "it was strictly in self-defense" (Tr. p. 42).
A review of the record for errors patent reveals that although the docket master indicates that the defendant was present at arraignment and pleading, the minute entry does not. A patent error exists if the defendant was not present during this stage of the proceedings. However, a patent error is harmless unless prejudice is shown. State v. Charles, 450 So.2d 1287 (La.1984). Because a plea of not guilty was entered and because no prejudice has been alleged by the defendant on appeal, this error is harmless.
The record also reveals that the trial judge failed to wait twenty-four hours after the denial of defendant's motion for new trial before sentencing the defendant. Again, such error is harmless unless prejudice is shown by the defendant. State v. Brogdon, 426 So.2d 158 (La.1983). Because the defendant has not made any showing of prejudice or raised this issue on appeal, this error also appears to be harmless.
In the defendant's only assignment of error, he contends that the trial court erred in imposing court costs or, alternatively, a thirty day jail sentence in addition to defendant's ten year hard labor sentence. Specifically, the defendant claims that because he received the maximum sentence and was later declared indigent by the court, the additional thirty day jail sentence would result in a sentence greater than the maximum set by the statute.
The leading case of Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), states the rule that when the aggregate imprisonment exceeds the maximum period fixed by the statute and results directly from an involuntary non-payment of a fine or court costs, this constitutes an impermissible discrimination that rests on the ability to pay. This precedent was recognized in Louisiana in State v. Williams, 288 So.2d 319 (La.1974). Thus, an indigent defendant cannot be given a term of imprisonment in lieu of a fine when to do so would mean that the defendant would have a term of imprisonment longer than the statutory maximum. The State v. Williams case also noted that the necessity of appointing counsel from the Office of the Public Defender to represent the defendant sufficiently establishes indigency.
In all the cases enforcing the Williams v. Illinois rule, the defendant was found to be indigent at an early stage in the proceedings and the indigent defender represented the defendant throughout the trial process. In the present case, however, the defendant's pro se motion to proceed In Forma Pauperis was granted six weeks after sentencing. Prior to that time, the defendant had retained his own counsel.
Whether or not the Williams v. Illinois rule applies when a defendant is declared indigent after sentencing is an issue which has not been addressed by the Louisiana courts. However, in a case where the court found that the Williams v. Illinois rule did not apply because nothing in the record indicated that the defendant was *399 indigent, the court noted that if that defendant is indeed indigent, the additional imprisonment may be avoided upon appropriate motion and hearing. State v. Lukefahr, 363 So.2d 661 (La.1978); cert. den., Lukefahr v. Louisiana, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This comment seems to suggest that if a defendant is found to be indigent at any point in the proceedings, he cannot be subjected to additional imprisonment in lieu of payment of fines or court costs if the additional imprisonment results in a sentence greater than the statutory maximum.
We conclude that the Williams v. Illinois rule applies to the instant situation. Therefore, the defendant's sentence is vacated and this case is remanded for resentencing so that the defendant's indigency does not subject him to imprisonment beyond the maximum sentence stated in the aggravated battery statute.
The defendant's conviction is affirmed.
CONVICTION AFFIRMED
SENTENCE VACATED
CASE REMANDED FOR RESENTENCING.
NOTES
[1] LSA-R.S. 14:34 states:

Aggravated battery is a battery committed with a dangerous weapon.
Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
LSA-R.S. 14:33 defines "battery" as follows:
Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.