513 So.2d 312 (1987)
STATE of Louisiana
v.
Manuel O. HERNANDEZ.
No. KA-4674.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1987.
Writ Denied December 18, 1987.
*313 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, La., for plaintiff-appellee.
Brian Treacy, Justin Caramagno, Elizabeth W. Cole, Tulane Criminal Law Clinic, New Orleans, for defendant-appellant.
Before KLEES, ARMSTRONG, JJ., and HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
The defendant, Manuel D. Hernandez, was charged by bill of information with the unlawful possession of 256.6 grams of cocaine, a violation of LSA-R.S. 40:967. After a trial, a twelve member jury found him guilty as charged. He was sentenced to serve twenty-five years at hard labor and *314 ordered to pay a $100,000 fine as mandated by LSA-R.S. 40:967(F)(2). In addition, the trial court ordered the defendant to pay court costs of $80.00 or serve an additional thirty days in default thereof. Although the state later charged the defendant as a habitual offender, the court quashed the multiple bill pursuant to LSA-C.Cr.P. Art. 916. The defendant appeals both his conviction and sentence.
Facts:
On November 5, 1984 the N.O.P.D. narcotics unit received information from a confidential informant that Manuel Hernandez was trafficking cocaine from a residence located at 1419 Constance Street. An investigation was initiated and a surveillance team was sent to the house. A search warrant was obtained and executed later that same day.
Upon entering the house to execute the search warrant, police officers found eight adults, including the defendant, and several children. All of the adults were then secured in a downstairs room directly across from the stairwell.
A search of an upstairs bedroom yielded a small scale and a dinner plate upon which was a white powdery residue. The police officers also found a revolver under a bed pillow and located a locked briefcase behind the headboard of the bed. The officers forced the lock on the briefcase and discovered approximately one pound of a white powdery substance, assorted plastic bags, rubber bands and $2,464.00 in cash. The officers also observed male clothing scattered about the bed. They seized a pair of pants which had laundry tags attached to the waistband and to the fly. The items were then collected, including the briefcase, and carried downstairs. Several officers testified that when the defendant saw the briefcase being carried downstairs and out of the house he suddenly called out, "That's my money ... but that's not my cocaine!"
The suspects were then searched. The officers found the key to the briefcase in Juan Vera's pocket along with $144.00. An inspection of the defendant's clothing revealed that his windbreaker had a laundry tag similar to those found in the confiscated pants. All eight suspects were arrested. Both Manuel Hernandez and Juan Vera, were charged as co-defendants with possession of cocaine. However, after posting bond, Juan Vera failed to appear at any subsequent proceeding and remained at-large as of the date of trial. Thus, only Hernandez was tried for the offense.
Errors Patent:
We note initially that the trial judge fined the defendant $100,000, the minimum amount of the mandatory fine under LSA-R.S. 40:967F(2) as it was in effect at the time of sentencing. However, in State v. LeCompte, 406 So.2d 1300 (La.1981), the Louisiana Supreme Court declared that portion of the penal provision of LSA-R.S. 40:967F(2) relating to fines unconstitutional as it did not establish a maximum fine amount which could be imposed.[1] We are therefore compelled to set aside that portion of the sentence relating to the $100,000 fine. State v. Salgado, 473 So.2d 84 (La.App. 5th Cir.1985); State v. Diaz, 461 So.2d 1099 (La.App. 5th Cir.1984).
We also note that the trial court imposed $80.00 in court costs with an additional thirty days in jail in default thereof. In this case defendant was declared indigent after the imposition of sentence. This court has held in similar factual situations that a defendant may be declared indigent at any point in the proceedings, even after sentencing. State v. Huffman, 480 So.2d 396 (La.App. 4th Cir.1985); State v. Barnes, 496 So.2d 1056 (La.App. 4th Cir.1986). The Louisiana Supreme Court has held that an indigent defender may not be given an additional term of imprisonment in lieu of payment of a fine or court costs. Such sentences have been held to be violations of a defendant's constitutional rights to due process and equal protection. State v. Williams, 484 So.2d 662 (La.1986); State *315 v. Garrett, 484 So.2d 662 (La.1986); State v. Brooks, 489 So.2d 352 (La.App. 4th Cir.1986).
Therefore, we amend defendant's sentence to delete that portion which imposes an additional thirty days of imprisonment in default of payment of court costs.
By his first assignment of error the defendant avers that the trial court erred in denying his Motion to Suppress the Evidence. More specifically, he contends that under the "totality of the circumstances" test enunciated in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the facts contained in the supporting affidavit did not justify the issuance of the search warrant in this case. The affidavit for the search warrant reads as follows:
On Monday, November 5th, 1984, Narcotics Officers Frank Weicks and Clarence Wethern spoke with an untested confidential informant. This informant stated that he had occasion to go to 1419 Constance St., the residence of Marylin Harper, within the past three days. During this visit, the informant met a Spanish male known to him/her as "Manola". "Manola" was carrying a large quantity of Cocaine into 1419 Constance St. in order to store it pending sale. The informant added that he/she was familiar with "Manola" through [a] previous narcotics transaction. In the prior transaction, "Manola" would store his contraband at the Constance St. residence. During subsequent visits to the residence, the informant witnessed several subjects negotiating the purchase of quantities of Cocaine from "Manola". According to the informant, "Manola" employs at least two other individuals to assist him in selling the Cocaine. These subjects were identified as Diane Vernon, and Jeffery Harper. Vernon and Harper were also observed at the residence. Jeffery Harper, according to the informant, remains at the residence to guard the Cocaine along with two other Hispanics. The Cocaine observed, by the informant, was recently transported to New Orleans by "Manola". "Manola" is a resident of New Orleans who allegedly spent the past few months in Florida, and returned to transport the Cocaine.
The Officers are familiar with the name "Manola" as a sobriquiet used by Manuel O. Hernandez (S/M 7-27-42). Hernandez's activities in the illicit narcotics trade have been brought to the Officers' attention by several informants both tried, and untested. Hernandez's arrest record also reflects a prior arrest for a narcotics violation. Through this arrest and previous investigations, Hernandez has been documented as an associate of several known and convicted narcotics traffickers. The records of Diane Vernon and Jeffery Harper were also checked and both reflect prior narcotics violations. In addition, the N.O.P.D. Narcotics Office has received at least two complaints relative to Marylin Harper's trafficking in drugs in the past.
In response to the information received, officers of the N.O.P.D. Narcotics Division began making periodic checks of the residence at 1419 Constance St. This was done on November 5th, 1984.
At about 10:00 AM, Sgt. Martin Venezia observed Manuel Hernandez in the front yard of the residence.
At about 4:05 PM, Officers F. Weicks and J. Robertson observed Diane Vernon exit the residence, enter a vehicle and drive away.
During the afternoon of November 5th, 1984, the Officers, along with Sgt. Venezia spoke with the informant. The informant stated that "Manola" was selling only wholesale quantities of the Cocaine, and would deal only through a few people. It should also be noted that due to the nature of the wholesale drug trade, a large amount of traffic to the house was not expected.
Based on the information received, the prior knowledge and criminal history of the subjects named, and the presence of two of the subjects at the residence, it is the affiants' belief that controlled dangerous substances, more particularly Cocaine, are being secreted within the residence located at 1419 Constance St. and *316 they respectfully request that a search warrant be issued for ...[.]
The defendant argues that the investigation and surveillance conducted by the police officers did not sufficiently corroborate the untested informant's information so as to establish the probable cause necessary for the independent magistrate to issue the warrant. We disagree.
The United States Supreme Court in the landmark case of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) abandoned the "two-pronged test" under Aguilar[2] and Spinelli[3] which required that the informant's "veracity," "reliability" and "basis of knowledge" be established prior to determining the probable cause necessary to issue a warrant. The Court instead adopted a "totality of the circumstances" approach. The Court held that while an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his information, these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case. "Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Id. 103 S.Ct. at 2328.
The Gates court held that the task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit, including the "veracity," "reliability" and "basis of knowledge" of the informant, there is a fair probability that the contraband or evidence will be found in a particular place.
The court further emphasized that the duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id., at 2332. After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. Id., at 2321. The determination of probable cause involves probabilities of human behavior as understood by persons trained in law enforcement. State v. Rodrigue, 437 So.2d 830 (La.1983); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir.1986).
In the instant case the informant had personally witnessed and participated in several drug transactions involving the defendant at the 1419 Constance St. residence. He had himself purchased drugs from the defendant. The informant identified the defendant and several of his associates and described their method of dealing drugs wholesale. He had seen large quantities of cocaine in the house within the past three days. The informant was not anonymous as the police officers were able to recontact him that day to clarify his information.
Through surveillance the narcotics officers were able to verify that the defendant and at least one other person named by the informant were present in the house. They observed activity consistent with wholesaling drugs. The officers identified prior narcotics activity of the defendant and three other named suspects. The defendant's involvement in narcotics activities was corroborated by other informants, both tested and untested.
Lack of further corroboration by surveillance does not invalidate warrants when other details support a reasonable inference of reliability. State v. Scott, supra; State v. Watkins, 499 So.2d 91 (La.App. 4th Cir.1986); See State v. Johnson, 404 So.2d 239 (La.1981), cert. denied 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). Although the affidavit does not contain an averment of previous reliability, such a statement is not a prerequisite to a finding of reliability. State v. Clay, 408 So.2d 1295 (La.1982). The informant's credibility in this case was further strengthened by his declaration against penal interest in *317 that he had admitted purchasing cocaine from the defendant. State v. Scott, supra.
We find that the information contained in the affidavit provided the magistrate a substantial basis for concluding that there was probable cause to issue the warrant.
By his second assignment of error the defendant contends that the trial court erred in denying a defense motion for continuance based on the non-appearance of two police officers subpoenaed as witnesses, and in failing to permit the introduction of their prior sworn testimony.
The defendant argues that the only evidence directly linking him to the confiscated cocaine was a statement allegedly uttered by him as the drugs were being transported out of the house. At the motion to suppress hearing, five officers who participated in the search and arrest testified that they heard defendant say, "That's my money ... but not my cocaine." Four other officers, Roland Doucette, Edward Melder, Michael Walsh, and Herbert Bourgeois, who were also in close proximity to the defendant, testified that they did not hear the defendant say anything.
At trial the state called the five officers who claimed to have heard the defendant's statement. Toward the end of the first day of trial the defense requested that instanter subpoenas be issued for Officers Walsh, Bourgeois, Melder and Doucette. On the second day of trial the court learned that the instanter subpoenas had not been served on Officers Melder and Doucette. The court also discovered that although the defense had issued subpoenas for Officers Melder and Doucette prior to trial, service had not been effected. The record reflects that service on Melder and Doucette had been unsuccessfully attempted on May 7, 1985 and on May 15, 1985 respectively. This was approximately two weeks prior to trial.
Officers Walsh and Bourgeois were called by the defense. They testified at trial that they were present at the execution of the warrant and assisted in guarding the suspects. They were positioned in the doorway between the kitchen and the living room, about three to five feet away from the defendant. Neither officer recalled any statement made by the defendant.
After the testimony of Officers Walsh and Bourgeois, the Judge allowed the Court Liason Officer to testify as to his efforts that day, as ordered by the court, to find Officers Melder and Doucette. The Liason Officer testified that both officers had been suspended from duty until June 1. Neither officer had been served.
The defense attorney then asked for a continuance until June 1, which was denied. The court also denied a defense request to offer the transcript of the officers' prior testimony at the Motion to Suppress hearing.
We note at the outset that the motion for a continuance should have been styled a motion for recess.[4] However, this misnomer does not prevent the court from examining the motion as though it had been properly denominated. State v. White, 389 So.2d 1300 (La.1980).
A motion for recess is evaluated by the same standards as a motion for continuance. State v. Warren, 437 So.2d 836 (La.1983). Therefore, to be entitled to a recess to secure the presence of a witness, the defendant must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of a witness at trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
LSA-C.Cr.P. Art. 709.
Although defense counsel did make known the facts and materiality of the expected *318 testimony of the absent officers, the record clearly shows that Officers Walsh and Bourgeois had already placed those same facts before the jury. A continuance for the absence of a material witness is rightly refused where such a witness' testimony would be merely cumulative. State v. Mobley, 187 La. 759, 175 So. 482 (1937). Denying a continuance because of an absent witness is not error where those facts to which he would testify could be proven by witnesses actually present. State v. Patterson, 176 La. 1013, 147 So. 62, 176 (1933).
Although the suspension of the absent officers was due to expire on June 1, it is questionable whether this fact alone established the requisite probability that the officers would be available if the trial was deferred to that date.
Of greater concern is the fact that service was attempted on the absent officers almost two full weeks before trial. Had counsel checked the subpoena returns he would have discovered that service had not been effected. Instead, he proceeded to trial apparently assuming that the officers had been served, or had been subpoenaed by the state, or would be secured by the court or the district attorney. Under these circumstances we cannot conclude that counsel's "efforts" to secure the presence of the absent officers represented due diligence. State v. Warren, supra.
Because the admission of the prior recorded testimony of the absent officers would have been merely cumulative to that given by Officers Bourgeois and Walsh, counsel did not adequately demonstrate the necessity of introducing the prior testimony of the absent officers. State v. Nall, 439 So.2d 420 (La.1983).
Furthermore, the decision to grant a recess is discretionary with the presiding judge. Absent a showing of prejudice to the defendant or abuse of discretion, the ruling of the trial court will not be disturbed. State v. Knighton, 436 So.2d 1141, cert. denied 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1983); State v. Gordy, 380 So.2d 1347 (La.1980). There has been no showing of prejudice to the defendant nor do we find that the trial court abused its discretion.
In appellant's third assignment of error he argues that the evidence presented at trial was insufficient to sustain his conviction because the state failed to prove either his actual or constructive possession of cocaine.
In reviewing the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). Where the conviction is based upon circumstantial evidence, LSA-R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Camp, 446 So.2d 1207 (La.1984); State v. Wright, 445 So.2d 1198 (La.1984). LSA-R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). "When a case involves circumstantial evidence and the [jury] reasonably rejects the hypothesis of innocence presented by the defendant ..., that hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." State v. Langford, 483 So.2d 979, 984 (La.1986), quoting from State v. Captville, 448 So.2d 676, 678, at 680 (La.1984).
Under Louisiana law a defendant need not personally possess a drug to violate the statute against its illegal possession. Constructive possession is sufficient. In order for a person to constructively possess a drug it must be subject to his dominion and control. Guilty knowledge has also been held an essential element of the crime of possession of an illegal drug. State v. Alford, 323 So.2d 788 (La.1975); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). A person may be deemed in joint possession of a drug which is in the physical *319 custody of another if he willfully and knowingly shares with the other the right to control of it. State v. Smith, supra; State v. Petta, 496 So.2d 390 (La.App. 4th Cir.1986).
The connexity between the defendant and the drugs, as well as his guilty knowledge, are factual questions for the jury which may be inferred from the circumstances of the case. State v. Edwards, 354 So.2d 1322 (La.1978).
The Louisiana Supreme Court has held that the mere presence of someone in an area where drugs are found, or mere association with the person found to be in possession of the illegal drugs is insufficient to constitute possession. State v. Walker, 369 So.2d 1345 (La.1979); State v. Alford, supra; State v. Petta, supra. However, the jurisprudence has not established precise guidelines as to what constitutes "possession" of drugs under the narcotic laws. Because each case must be analyzed on its own merits, previous cases are illustrative only. Bujol v. Cain, 713 F.2d 112 (5th Cir.1983). State v. Trahan, 425 So.2d 1222 (La.1983).
In Bujol, Id at 115, the U.S. 5th Circuit noted several factors which the Louisiana courts have considered in determining whether a defendant exercised the requisite "dominion and control." These factors include, but are not limited to: a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's physical proximity to the drugs, and any evidence that the particular area was frequented by drug users.
In the instant case, defendant's statement, "That's my money ... but not my cocaine," clearly establishes his guilty knowledge of the presence of the drugs.
The defendant had easy access to the room in which the drugs were found. There was some evidence to indicate that defendant himself occupied that room. Also, the defendant's money was locked in the same briefcase containing the cocaine.
Based upon these facts, we find that a reasonable jury could have found that defendant had both the requisite guilty knowledge and sufficient dominion and control of the illegal drugs to justify his conviction for possession of cocaine.
Lastly, appellant contends that the trial court erred in sentencing him to serve twenty-five years at hard labor and to pay a fine of $100,000. He argues that the sentence is too severe, and that the trial court did not individualize the sentence as required under LSA-C.Cr.P. Art. 894.1.
In State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984), this court pointed out that the test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged: First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1 in determining the sentence. Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
Although a sentencing judge need not articulate every factor set forth in LSA-C.Cr.P. Art. 894.1, the record must show he adequately considered the sentencing guidelines. State v. Straughter, 406 So.2d 221 (La.1981); State v. Hawthorne, 454 So.2d 285 (La.App. 4th Cir.1984). LSA-C.Cr.P. Art. 894.1 is satisfied, without the necessity for a remand, where evidence in the record clearly shows an adequate factual basis for the sentence. State v. Telsee, 425 So.2d 1251 (La.1983).
Although the trial judge in the instant case did not enumerate the factors listed in LSA-C.Cr.P. Art. 894.1, she pointed out that defendant was convicted of having a large amount of cocaine in his possession, which was at least 80% pure, and that she was convinced defendant had travelled from Florida to New Orleans for the sole purpose of setting up a cocaine distribution operation from which he would reap significant benefits. The judge further discussed the circumstances of defendant's arrest and commented upon the ruthlessness *320 and ugly side of drug dealing as exemplified by this case. The record further indicates that the defendant had a prior Florida conviction for possession of cocaine and that he employed or associated with others having drug violation histories.
We find that the record and the factors listed by the court at sentencing reflect adequate compliance with LSA-C.Cr. Art. 894.1 in individualizing the sentence to this particular defendant.
Considering the nature of the crime, the defendant's background and the circumstances of his arrest we cannot say that a sentence of twenty-five years was excessive or an abuse of the trial court's discretion. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Hawthorne, supra.
For the foregoing reasons the defendant's conviction is affirmed but his sentence is amended to delete only that portion which imposes a $100,000 fine pursuant to LSA-R.S. 40:967(F)(2) and thirty days in default of the payment of $80.00 in court costs.
CONVICTION AFFIRMED; SENTENCE SET ASIDE IN PART.
NOTES
[1] In 1986 the Louisiana Legislature amended LSA-R.S. 40:967F(2) to provide a mandatory fine of not less $100,000, nor more than $350,000. Acts 1986, No. 627 § 1, effective August 30, 1986.
[2] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[3] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[4] A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the hearing is commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced. LSA-C.Cr.P. Art. 708.