448 So.2d 731 (1984)
STATE of Louisiana
v.
Johnnie FOLEY.
No. 83 KA 680.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*732 John M. Mamoulides, Dist. Atty., Douglas Friederichsen, William C. Credo, III, Dorothy A. Pendergast, Asst. Dist. Attys., 24th Judicial Dist., Parish of Jefferson, Gretna, for plaintiff-appellee.
Martha E. Sassone, Staff Appeals Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, BOWES and CURRAULT, JJ.
*733 KLIEBERT, Judge.
Defendant, Johnnie Foley, was convicted of two counts of armed robbery in violation of R.S. 14:64, one count of attempted armed robbery in violation of R.S. 14:27 and 14:64, and one count of attempted second degree murder in violation of R.S. 14:27 and 14:30.1. He was sentenced to concurrent sentences of nine-nine (99) years at hard labor for the two counts of armed robbery, each to be served without benefit of parole, probation or suspension of sentence; forty-nine and one-half (49½) years at hard labor for the count of attempted armed robbery, and fifty (50) years at hard labor on the attempted second degree murder count.
Counsel representing the defendant on the appeal urged three errors: (1) Failure to suppress inculpatory statements made by the defendant to a detective, (2) Failure to sustain defendant's objections to the admission of exhibits and (3) Excessiveness of the sentence. By letter directed to the Supreme Court and referred to us, the defendant contends the brief filed by his counsel is inadequate and worthless because it urges only two assignments of error and is only three and one-half pages in length.
We have carefully reviewed the entire record for errors patent as well as those assigned by counsel and do not believe the trial court erred. The function of the court-appointed counsel is not to create rights for an accused; but, rather, to advocate the facts favorable to a defendant's opposition and to assert and/or protect those rights granted to the accused by our constitutions and statutory laws. As designated by its name "brief", the document filed by counsel is intended to be a precise and to the point recitation of his client's position under the applicable facts and circumstances of the case. Its purpose is not to raise irrelevant issues and law. Here counsel has urged error in those areas containing some factual discrepancies from which a legal argument supporting a contention of error could be made. Although we do not agree a reversible error was committed, we nevertheless believe defendant's counsel briefed the relevant issues while avoiding superfluous recitations of irrelevant issues and law.
On September 16, 1982, at about 8:00 o'clock P.M., Sandra Sarah, accompanied by her young daughter, was leaving the Walgreen's Drug Store located on Lafayette Street in Gretna, Louisiana, when she was approached by the defendant. He first asked her where she was going and then, when they were in the parking area, asked her to point out her car. The subject then demanded her keys and Ms. Sarah refused to give him the keys. She drew her child close to her and the defendant told her that if she didn't give him her keys and her purse, he would shoot her. She could see that he had a gun wrapped in a red handkerchief and it was pointed at her. She gave him her keys and purse and ran back into the store. She was able to see him drive off in a dark blue 1980 Ford Mustang. The next morning, Ms. Sarah received a telephone call from a woman who stated that her daughter had found Ms. Sarah's purse in Marrero. She recovered her purse and, along with her husband, drove around in the immediate area of the subdivision. She located her car and notified the police.
In the evening of September 19, 1982, Ms. Nellie Code was seated in her car, a 1980 two toned gray Mustang with narrow stripes, in the 2200 block of Huey P. Long Avenue in Gretna, waiting for her sister. A man, later identified as Johnnie Foley, walked up to her car and asked Ms. Cole if she had a light. She extended her lighter to him and he walked off. A few minutes later, the defendant returned and stuck a gun in her car window and told her to push over. Because her car had bucket seats, she had some difficulty. In her panic to comply, she started screaming and hollering. He told her to stop screaming and to push over. He got in and started the car and as he pulled off, she jumped out.
Later that same evening, Don Poole was working, for his first time, as the cashier at the Ecol Service Station on the Westbank *734 Expressway in Marrero. A subject, later identified as Johnnie Foley, entered the store and walked over to the refrigerated section and got a cold quart of beer. The subject brought it to the counter and asked the price. He then dug into his pockets for his money and pulled out a gun with a white bandanna wrapped around his hand. He put the gun in the cashier's face and demanded that all the money be put in a bag. The cashier froze and the order was repeated. The cashier started to hit the buttons on the cash register and with this the suspect fired his gun, the bullet striking the cashier in his side. The suspect turned and fled from the store, leaving the quart of beer on the counter.
The following evening a description of the vehicle stolen in the robbery of Ms. Cole was broadcast over the police frequency. Sergeant Joseph Dean, of the Gretna Police Department, was driving in the vicinity of Gretna Boulevard and Gehring Drive when the bulletin was given. The sergeant looked ahead and saw the very same car traveling right in front of his. He turned on his red lights and used his public address system in an effort to get the car to pull over. The car sped away and a high speed chase ensued. The fleeing vehicle avoided one road block, but the driver finally lost control of the vehicle in the 4400 block of Newton Street. Sergeant Dean had been following the subject vehicle and was forced to skid to a stop right behind him. The driver jumped out of the car and started to run. Sergeant Dean opened his car door, stood upon the floor board and shouted to the suspect to stop. The subject fell to the ground and then got up and turned toward the officer. As it appeared that he had a weapon in his hand, the sergeant fired one shot. The subject turned and ran into the wooded area near 24th Street and Huey P. Long Avenue. The police surrounded the wooded area and the Canine Division was able to track and apprehend the suspect later identified as Johnnie Foley, the defendant here.
At the trial, all of the victims who had previously identified the defendant from mug shots and picked him out of line-ups again identified Johnnie Foley as the person who perpetuated the crimes against them. Further, fingerprints were lifted from the vehicles and matched those of the defendant. The defendant took the stand and denied he committed the crimes and explained his possession of the victim's Mustang on the night of the arrest by saying he found the car with the keys in it and since he wanted to go to Gretna, he merely drove the car to Gretna. Additionally, the State sought to introduce inculpatory statements made by the defendant to the investigating detectives. The court suppressed some, but admitted those made to Detective Dunn. Defense counsel, in his first assignment of error contends the trial court erred in admitting as evidence the statements made to Detective Dunn by the defendant.
On September 20, 1982, the night defendant was arrested, Detective Dennis Gordon, of the Jefferson Parish Sheriff's office, who was assigned to investigate the Ecol robbery and shooting, advised the defendant of his Miranda rights. The defendant signed a statement stating he understood the rights, but chose to remain silent.
Detective Dunn, a member of the Gretna City Police, was assigned on September 17, 1982, to follow up the investigation concerning the recovery of Ms. Sarah's purse and the subsequent recovery of her Mustang. After learning of the chase, the arrest and the matching of the arrestee's prints to those on the Mustang, on September 22, 1982 he went to the correctional center and met with the defendant. He advised Foley of his Miranda rights and attempted to interview him, but he chose to remain silent stating that he preferred to consult with an attorney.
Detective Gordon again met with the defendant on September 27, 1982 and without again informing him of his Miranda rights informed him of a gun and a statement he obtained from Ricky Taylor implicating the defendant in the armed robbery at the service station. The trial judge suppressed inculpatory statements made to Detective *735 Gordon relative to the Ecol robbery and shooting because he failed to inform the defendant of his Miranda rights before the inculpatory statements were made by Foley.
According to Detective Gordon, after meeting with the defendant, he called Detective Dunn to inform him the defendant wanted to speak to him relative to the armed robberies which occurred in Gretna. On the next day, September 28, 1982, Dunn went to the Jefferson Parish Correctional Center and met with the defendant and at the time verbally re-advised him of his rights. According to Detective Dunn, but denied by the defendant, Foley then confessed to the robbery of a woman outside of Walgreen's and the robbery of a woman at the corner of Twenty-first and Huey P. Long in Gretna. Detective Dunn returned to the correctional center the next morning to obtain a typewritten statement from Foley, but was informed Foley had spoken to his attorney and did not want to reduce his statement to writing. The trial judge admitted Detective Dunn's testimony as to the statements.
Before a confession can be introduced in evidence the State has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once an accused has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the police until counsel has been made available to him, unless the accused himself initiates further communication with the police. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
When an accused asserts his right to counsel, the police must "scrupulously honor" the invocation of the right and the interrogation cease. State v. Thucos, 390 So.2d 1281 (La.1980); State v. Manning, 380 So.2d 46 (La.1980). The question of whether an accused's rights are "scrupulously honored" depends on the totality of the circumstances involved in the particular facts of each case. Factors to be considered are the time lapse between the request for counsel and the subsequent interrogation, whether Miranda warnings were given between each separate interrogation, whether waiver of right forms were signed and whether pressures were asserted on the accused by the police between the time he invoked his right to counsel and the subsequent interrogation. State v. Shea, 421 So.2d 200 (La.1982); State v. McCarty, 421 So.2d 213 (La.1982).
In State v. Harper, 430 So.2d 627 (La. 1983), the Supreme Court concluded statements voluntarily made and given two days after the initial request for counsel during a conversation initiated by the accused after he had been advised of his Miranda rights were admissible notwithstanding the accused's specific allegations of abuse and threats during the two day interim.
Here, five days had elapsed since the initial interviews in which the accused had expressed his desire to speak to his lawyer before giving statements. Detective Dunn had terminated the interview after this request and did not again interrogate the defendant until a request to see him was initiated by the defendant through Detective Gordon who was a member of a different police department. Additionally, Detective Dunn had again advised the accused of his Miranda rights before he made the inculpatory statements.
Notwithstanding the defendant's denial, since the direct evidence overwhelmingly leads to a conclusion of guilt, defendant's testimony as a whole was not believable and since there was no evidence the defendant was threatened or coerced, nor that the statements were made in response to pressure by the police interrogators during the five day interim period, the trial judge concluded the statements were knowingly, freely and voluntarily given during an accused-initiated *736 interview after he had been apprised of his Miranda rights and, hence, allowed their admission.
Our function as a reviewing court is not to make a decision but, rather, to review the decision made by the trial court during and as a result of the trial. Since the admissibility of an inculpatory statement is, in the first instance, a matter for the trial court, its decision is not to be disturbed unless not supported by the evidence. State v. Burkhalter, 428 So.2d 449 (La.1983). In our view, the totality of the evidence here supports the trial judge's decision to admit the inculpatory statements, hence, we will not disturb it.
Counsel for the defendant argues the sentences imposed by the trial judge, individually and cumulatively, are excessive and the trial judge failed to adhere to the requirements of LSA-C.Cr.P. Article 894.1[1] while imposing the sentence.
At the time of sentencing, the trial judge made the following observation:
"Two counts of armed robbery; one count of attempted-armed robbery; one count of attempted first degree murder. You are a prior-felony offender.
During the course of the trial, testimony was elicited from the witnesses that you used a handgun in the armed robbery offenses that you committed. You put the life of the victims in jeopardy.
There is no doubt in my mind that you are a menace to this community and to society. There is nothing that I heard during the trial that would deminish (sic) the severity of your offense and there is no question in my mind that you are in need of incarceration to make this community safe.
* * * * * *
.... as I previously stated for the record, there is no way that I can find any element from the testimony that I heard during this trial that would deminish the seriousness of your offenses.
You placed the life of two victims in complete jeopardy with the handgun and the third victim's life in jeopardy. You are a complete menace to this community and you are remanded to the custody of the sheriff at this time."
Where either one of parts A(1), (2) or (3) of LSA-C.Cr.P. Article 894.1 is applicable, the Court has a legislative mandate to imprison a convicted felon. State *737 v. Dirden, 430 So.2d 798 (5th Cir.1983). Here, we know from the record that the defendant has been convicted of simple robbery in 1979, had been in Angola since 1980, was released after serving one year and six months of the sentence and, then, within three weeks of his release, (1) robbed a woman and her child of her money, keys and car; (2), thence, within two days, again at gunpoint, robbed another woman of her car and, on the same day, shot a service station attendant while attempting to rob him, and (3) when discovered in the stolen car, attempted to escape rather than submit to questioning. Clearly, the trial judge did not err in imposing a prison sentence. Thus, the issue narrows to whether under the circumstances of this case the individual and/or cumulative sentences are excessive.
The defendant received the maximum sentence statutorily allowable for each of the crimes for which he was convicted. While pointing to State v. Telsee, 425 So.2d 1251 (La.1983) and State v. Robicheaux, 412 So.2d 1313 (La.1982) as authority, defense counsel contends the sentences are excessive because they have failed to follow the American Bar Association's recommendations. According to their recommendations, generally a prison term should not exceed ten years and even for the more serious of offenses, the term should not exceed twenty-five years.
Here, the trial judge in imposing the maximum sentences, considered the fact the defendant had a prior felony conviction and sentence and virtually upon release from incarceration (within weeks) placed the lives of two of his victims in serious jeopardy and attempted to take the life of another victim by shooting him, all without cause or provocation. The record does not reveal any mitigating circumstances nor does the defendant or his counsel point to any. Rather, the record shows the defendant reflected no remorse and portrayed a nonchalant attitude about his apprehension and conviction.
Although the sentences are severe, it should be noted that the trial court had the discretion to expand their effect by making the sentences consecutive. As imposed, the effective sentence for all four crimes is life imprisonment without benefit of parole.
As a reviewing court, our function is not to substitute our views and opinions for that of the trial judge as to what constitutes a fair and equitable penalty. Rather, our review is for the purpose of protecting the convicted defendant from a sentence which is shown to be excessive because of the nature of the offense committed or because of the particular character of the convicted defendant or because the public interest requires his early rehabilitation and release, rather than, punishment for the convicted crimes and protection of the public from the potential commission of future crimes by the same defendant.
Under the record and circumstances involved here, we cannot say the trial judge erred in imposing the maximum sentence for each crime convicted. Since the defendant had been previously given opportunities to reform, now paramount in the imposition of the sentence is the protection of the public from the potential commission of future crimes by the same defendant. Although he is only twenty-two years of age, the defendant now stands convicted of five felonies; in three of which he placed the lives of persons in serious jeopardy. The statutes provide for and the public is entitled to protection from him by restricting his freedom in society.
Accordingly, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] LSA-C.Cr.P. Article 894.1 provides as follows:

A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendnat did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.