DOUCET, Judge.
This appeal arises from the conviction of Thomas James Sanders for the second-degree murder of a Lake Charles woman.
On September 24, 1983 at about 10:00 A.M., the Lake Charles Police Department was notified of a homicide at an apartment complex at 3117 Deaton Street in Lake Charles, La. The female victim had been beaten to death, then sexually violated in her apartment at about 3:00 A.M. that day. A man’s wallet containing a social security card and driver’s license for the defendant, Thomas James Sanders, of 3117 Deaton Street, was found near the victim’s body. Questioning of the victim’s sister, who lived in the apartment with the victim and her children, revealed that neither the victim nor her sister were acquainted with Thomas James Sanders. That same afternoon, the police located the father of the defendant at the apartment complex. He told the police officers that his son could be found at an auto paint and body shop near Broad Street and First Avenue in Lake Charles, La. Officer Brian Brewton and Captain T.W. Smith went separately to that location. Sergeant Robert Martin arrived shortly afterward. Upon finding the defendant, Officer Brewton asked the defendant to voluntarily accompany him back to the station for questioning. The defendant agreed to go with the officers. He indicated that he would tell them “all about it” but that he did not want to talk at the body shop. The defendant was told his rights under the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), put in a police car and taken to the police station. There is a conflict in the testimony of the officers with regard to whether the defendant was hand-cuffed before he was put in the police car, as is normal police policy in Lake Charles.
At the police station, the defendant was advised that he was to be questioned with regard to a homicide investigation. He was again advised of his Miranda rights by a detective before questioning. He signed a written waiver of his rights. He then voluntarily gave to the detectives oral *1024 and written statements describing the murder in detail. He included a description of the location of items of clothing which he wore during the offense and which he subsequently hid in his apartment. The defendant gave the officers permission to perform a “rape kit” of his person. Then both the defendant and his father gave permission to search and seize items at their apartment. All these events, from discovery of the body to the confession and consent to search and seize, occurred within a single day. Following the description given by the defendant in his confession, police officers went to defendant’s apartment and seized a briefcase containing a pair of bloody jeans and tennis shoes.
The defendant was indicted by a grand jury for first degree murder. The trial Judge granted a motion for a sanity commission. He ordered the appointment of a sanity commission to examine the defendant and submit a report of its findings. The sanity commission hearing was held on December 14, 1983. The trial court found the defendant to be competent and able to proceed to trial. The defendant was arraigned on the charge of first degree murder. He pled not guilty and not guilty by reason of insanity. The defendant filed motions to suppress the confession and the evidence, which were heard and denied by the trial court.
On the motion of the Calcasieu Parish District Attorney’s Office, the bill of indictment was amended to a charge of second degree murder. The defendant was again arraigned and again pled not guilty and not guilty by reason of insanity.
On March 21, 1984, a twelve-person jury found the defendant guilty as charged. On March 27, 1984, the defendant was sentenced to a term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant appeals based on alleged error in the decision of the trial judge in connection with the sanity commission hearing; and in connection with the denial of the motions to suppress the confession and the evidence.
The defendant argues that the trial court was in error in finding that the defendant had the capacity to proceed to trial based on the testimony at the sanity commission hearing.
La.C.Cr.P. art. 641 states that the “mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense”. Under La.R.S. 15:432, a defendant is legally presumed to be sane and responsible for his actions. The defendant carries the burden of proving by a clear preponderance of the evidence that, as a result of a mental disease or defect, he lacks the capacity to understand the proceedings against him or to assist in his defense and therefore, is incompetent to proceed. State v. Bennett, 345 So.2d 1129 (La.1977); State v. Brown, 414 So.2d 689 (La.1982).
In this case, two court appointed medical experts in the field of psychiatry, Drs. Giles Morin and Harper Willis, interviewed the defendant, submitted reports, and testified, both at the sanity hearing and at trial, that the defendant was competent to stand trial. Both examining physicians filed written reports and testified at the sanity hearing that the defendant possessed the capacity to understand the proceedings against him and to assist in his defense.
Unlike the defendant in Bennett, supra, Thomas James Sanders was not indigent and was not forced to rely on the findings of the court appointed sanity commission. This is evidenced by the fact that the defense hired Dr. Charles Cox to examine the defendant and to testify as to the defendant’s mental condition at the trial on the merits. Nevertheless, the defendant failed to offer medical testimony or any other proof of mental defect or incapacity at the sanity hearing. Neither Dr. Cox nor any other witness testified as to the defendant’s mental condition at the sanity commission hearing.
“A trial court’s determination of the mental capacity of a defendant is entitled *1025 to great weight and his ruling will not be reversed in the absence of manifest error. State v. Brown, supra; See also State v. Morris, 340 So.2d 195 (La.1976) and State v. Flores, 315 So.2d 772 (La.1975).”
The testimony of the physicians corroborates their reports in stating that the defendant met the criteria outlined by the Bennett decision and was competent to stand trial. Their testimony revealed that the defendant could distinguish between right and wrong and was able to communicate coherently. They further testified that the defendant was not psychotic. Based upon this evidence, the trial judge had sufficient factual support for his finding that the defendant possessed the requisite capacity to stand trial.
In light of the lack of evidence of incapacity, we cannot find that the trial court’s determination of competency was clearly erroneous. As the Supreme Court stated in State v. Brown, supra:
“Viewing the evidence in a light most favorable to the prosecution, the defendant has failed to establish the affirmative defense of insanity by a preponderance of the evidence. No rational trier of fact would have found defendant legally insane on the basis of the evidence presented. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Roy, 395 So.2d 664 (La.1981).”
In his remaining arguments defendant contends that the trial judge erred in denying the motion to suppress the confessions and the evidence on several grounds.
First, he argues that the confession and the consent to a search are inadmissible as the fruit of a warrantless arrest made without probable cause or exigent circumstances.
La.C.Cr.P. art. 213 states that a peace officer may arrest a person without a warrant when he has “reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of an officer.” Contrary to the contentions of the defendant, “an arrest made in a public place without a warrant is
valid if founded on probable cause, regardless of the presence or absence of exigent circumstances. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).” State v. Marks, 337 So.2d 1177 (La.1976).
The Louisiana Supreme Court in State v. Arceneaux, 425 So.2d 740 (La.1983) explained that:
“Reasonable cause, which we have treated under this article as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13. L.Ed.2d 142 (1964); State v. Drew, 360 So.2d 500 (La.1978). Probable cause may be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Drew, supra. Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623,10 L.Ed.2d 726 (1963); State v. Drew, supra.”
In this case, a wallet containing a social security card and driver’s license in the name of Thomas James Sanders was found next to the body of the victim. Upon questioning the victim’s sister, the police discovered that she knew neither Thomas James Sanders nor of any reason for the wallet’s presence in the apartment. The police officers immediately attempted to locate Sanders. Sanders was located and asked to accompany the officers to the Police Station in order to answer some questions. He answered that he would tell them all about it but not there (at the body shop). The information in the possession of the officers was sufficient to justify men of average caution in believing that the defendant committed the murder.
*1026 It is not clear whether the defendant thought he was under arrest or detained by police at any point before his confession, or whether the police officers involved believed Thomas Sanders to be arrested, forcibly detained or simply voluntarily answering police inquiries. It is clear, however, that probable cause existed for arrest or forcible detention. Therefore, any arrest or detention was legal. It follows that the evidence and confession were not the fruits of an illegal arrest. They were admissible. The trial judge was correct in denying the defendant’s motions to suppress.
The defendant further argues that the confession and consent to search were improperly taken. Defendant contends that, since the defendant was only a few months over seventeen years of age when the offense was committed and the confession and consent were made, a parent or legal counsel should have been present at the taking of a confession and when the consent to search was obtained, under the rule of State in the Interest of Dino, 859 So.2d 586 (La.1978).
The defendant misreads the intention of the court in the Dino decision. As the Louisiana Supreme Court later clarified in State v. Edwards, 406 So.2d 1331 (La. 1981), the protections of Dino extend only to those who the law defines as juveniles, that is those under seventeen years of age. With regard to criminal responsibility, the defendant was an adult in the eyes of the courts at the time of the offense and the confession.
The defendant also argues that the confession and consent to search should have been suppressed since they were made without his being properly informed of the charge against him.
La. Constitution Article I, § 13 states, in part, that when a person has been arrested or detained in connection with the investigation or commission of any offense, he should be advised of the reason for his arrest or detention. In this case it is clear that the defendant knew why the police wanted to question him. Upon being asked to come to the police station to answer questions, he acquiesced readily, saying that he would tell them all about it, before he was even told why or on what subject he was to be questioned. He was immediately given his Miranda rights, put in a police car and taken to the station. The testimony taken at the suppression hearing revealed that upon his arrival at the police station, Corporal John Pape told the defendant that he was to be questioned regarding a homicide investigation. The defendant was again advised of his rights and had those rights explained to him. When the officers were satisfied that he understood his rights he was asked to sign a waiver of rights, which he apparently did readily. He then unhesitatingly gave written and oral statements in which he confessed to the murder. It is clear that the defendant was informed of the reasons for questioning and completely understood his circumstances before confessing to his crime.
Finally, the defendant argues that the totality of the circumstances surrounding the confession and consent to search and seizure created a coercive environment in which he could not make a free and rational choice to waive his rights. The admissibility of a confession is a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Perry, 420 So.2d 139 (La.1982). The evidence taken at the suppression hearing and at trial supports a finding that the confession and its re-enactment in order to reduce it to writing were free, voluntary and without any pressure from any police officer.
As to the defendant’s contention that the consent to search was wrongfully obtained, the record reflects that both the defendant and his father, who was present at the police station, were advised of the *1027 circumstances and each freely gave his permission for officers to enter their residence to search for items of clothing described by the defendant. Furthermore, the defendant’s father accompanied the officers to his apartment for that purpose.
There is no evidence to indicate that the conduct of the police in this case was other than proper or that the confession was not a product of a voluntary and rational choice by the defendant. As a result, we find that the trial judge properly denied the defendant’s motions to suppress.
Accordingly, for the reasons assigned, we affirm the conviction and sentence.
AFFIRMED.