532 So.2d 191 (1988)
STATE of Louisiana, Plaintiff-Appellee, In the Interest of Isaac WELLS, III, Defendant-Appellant.
No. CR87-1239.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*192 Michael Bonnette, Natchitoches, for defendant-appellant.
Michael Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
KING, Judge.
The sole issue presented by this appeal is whether a waiver of rights and a confession by an accused, relative to an offense committed prior to his seventeenth birthday and while under the jurisdiction of the juvenile court, is admissible when the accused made the waiver and gave the confession after attaining the age of seventeen.
Isaac Wells, III (hereinafter defendant) was arrested on March 20, 1987, for the armed robbery of a grocery store in Natchitoches, Louisiana that occurred in October, 1985. At the time of the armed robbery defendant was a juvenile, however, at the time of his March 20, 1987, arrest, he had reached his seventeenth birthday on February 3, 1987. After his arrest, defendant signed a waiver of rights form and gave a complete confession admitting to the 1985 armed robbery of the grocery store. Prior to an adjudication hearing in the juvenile court, defendant filed a motion to suppress his waiver of rights and the confession alleging that his parents had not been present when he signed the waiver and gave the confession. The trial court denied the motion to suppress and, thereafter, the defendant pled guilty to armed robbery, reserving his right to appeal the denial of his motion to suppress. We affirm.

FACTS
On March 20, 1987, defendant, Isaac Wells, III, was arrested for armed robbery by Corporal Larry Vaughn of the Natchitoches City Police Department. Corporal Vaughn and his partner, Officer Paul Johnson, picked up defendant at Natchitoches Parish Junior High School and brought him to the City Police Department where Vaughn called and notified defendant's mother of her son's arrest.
Defendant had been a suspect in the armed robbery of a neighborhood grocery store in north Natchitoches since the crime took place. Eventually, by March 20, 1987, Corporal Vaughn had gathered enough evidence to substantiate the arrest of defendant in connection with the armed robbery.
Later that morning, defendant was released into the custody of his mother after he had signed a waiver of his Miranda rights[1] and signed a confession about his role in the October, 1985 armed robbery. On June 18, 1987, defendant, through counsel, waived formal arraignment and denied the charge of armed robbery levied against him. This proceeding took place in Juvenile Court of the City of Natchitoches, Louisiana.
*193 In July, 1987, defendant's counsel filed a motion to suppress the confession given by defendant to the police at the time of his March 20, 1987, arrest. In particular, defendant alleged that he had requested the presence of an attorney during questioning and that the interrogating officer denied his request and threatened him. On July 23, 1987, the Juvenile Court held a hearing on the motion to suppress.
The prosecution first called Corporal Vaughn to testify. He testified that Mrs. Wells arrived before any of the interrogation of her son took place. Vaughn testified that in Mrs. Wells presence, he informed her son, defendant, of his right to remain silent, the right to an attorney or appointment of an attorney if they could not afford to hire one, and that anything which he said could be used against him in a court of law. The prosecution then introduced a waiver of these rights, signed by defendant, and witnessed by Vaughn and Officer Paul Johnson. Also introduced was defendant's signed confession of the events that took place on Halloween Night in October, 1985, which led to the armed robbery of the grocery store. In it, defendant admitted to his role in the armed robbery of the store of $20.00 and of splitting the proceeds with his three accomplices. Additionally, there was introduced a custodial release signed by Mrs. Wells indicating that she would retain custody of her son until further notification for a hearing on the matter. Corporal Vaughn testified that neither defendant nor his mother requested an attorney during the interrogation.
The version of defendant and his mother as to what took place at the police station that morning is much different.
Defendant testified that the Natchitoches City Police had twice picked him up in reference to the 1985 armed robbery charge; once on February 3, 1987, for questioning and a month later on March 20, 1987, when he was arrested. Defendant stated that when he was picked up in February, his mother was called and allegedly, after requesting an attorney, the police released him into his mother's custody. Defendant further testified that on March 20, 1987, the arresting officers threatened him with prison time en route to the police station. When they arrived at the station, defendant stated he was forced to sign a typed confession of his involvement in the October, 1985 armed robbery. He also stated that his mother was not in the room when he signed the waiver of rights and the confession. Under cross-examination, defendant stated he was told of all of his rights except for his right to an attorney during questioning and that if he could not afford one, one would be appointed for him. He specifically stated that the arresting officers did not ever tell him of his right to counsel.
At trial, the prosecution introduced copies of the Miranda rights form and of the confession signed by defendant at the time of his arrest. Both documents contain explicit recitations of the Miranda rights of an accused; both also contain the defendant's signature.
Defendant's mother testified that when she arrived at the police station on March 20, 1987, she was denied access to her son and did not see him until after he gave his confession. She further stated that when she came to the police station a month earlier in February, she told the officers that she wanted an attorney for her son and that she was told there was no need for an attorney, and her son was released.
Officer Vaughn denied ever threatening defendant upon his arrest. He denied telling defendant that others had confessed to the armed robbery and had implicated him. Vaughn specifically stated he read the rights of the accused to him before he signed either document and included in the recitation was the right to have an attorney present during questioning. He concluded his testimony by indicating that although the defendant was picked up a month earlier for questioning, that he did not ever remember the defendant or his mother requesting an attorney.
After hearing arguments from counsel, the trial judge denied defendant's motion to suppress the confession given by him. Defendant thereafter pled guilty to the armed robbery, reserving his right to appeal the *194 denial of his motion to suppress under State v. Crosby, 338 So.2d 584 (La.1976).

LAW
Defendant asserts that the trial judge erred when he denied the motion to suppress his inculpatory statement. Two issues are raised by this assignment of error. The first is that the armed robbery was committed while defendant was a juvenile and that for this reason the defendant's statement was obtained in violation of State In Interest of Dino, 359 So.2d 586 (La.1978), cert. den., 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).
This statement was not obtained in violation of the special protections afforded juveniles in Dino. Defendant was older than seventeen at the time he gave his statement on March 20, 1987. The Dino decision has been limited to statements given before the speaker's seventeenth birthday. State v. Edwards, 406 So.2d 1331 (La. 1981); cert. den., 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Sanders, 463 So.2d 1022 (La.App. 3 Cir.1985); State In Interest of Lewis, 377 So.2d 1322 (La.App. 1 Cir.1979).
In State In Interest of Lewis, supra, the court was faced with the same basic fact situation as found in the case at bar. At age sixteen, Lewis committed an armed robbery. A confession was obtained in Los Angeles by a Louisiana deputy sheriff after the youth's seventeenth birthday. The First Circuit noted, as does defendant in brief, that the Dino opinion spoke of protecting juveniles without defining the term. Noting the lack of definition in the laws pertaining to juveniles, the court found that Dino was addressing the immaturity and vulnerability of all youth and not just those within the jurisdiction of juvenile courts. Since those committing acts after their seventeenth birthday and confessing while over seventeen years of age were not covered by Dino, the extra procedural burden was not seen as mandated since adults were already protected under Miranda, supra, and La. Const. Art. 1 § 13 (1974). The First Circuit also noted the opinion in State v. Collum, 365 So.2d 1272 (La.1978), where the Supreme Court only regarded Dino as applying to confessions of persons under seventeen.
In State v. Edwards, supra, the Supreme Court addressed the argument that Dino should apply to all those under the age of majority since the Dino opinion also used the term "minor." In considering the argument the Supreme Court stated:
"Dino, as we understand it, is not precedent for requiring that minors seventeen years of age have a parent present when making statements to police authorities.
* * * * * *
The law, nonetheless, requires definition. We opted for a prophylactic rule in Dino and fixed the age at under seventeen: a line traditionally drawn for criminal responsibility between the juvenile9 and the adult. There is no imperative reason to extend the Dino requirements to the minor who is a seventeen year old adult.
9"Although the word juvenile is without ambiguity as it appears in the statutes, the demarcation line for the court's jurisdiction for juvenile offenders lies at `less than seventeen.' For a thorough discussion of the relevant statutory language contained in La. Const. Art. 5, Section 19, LSA R.S. 13:1569(3) and (4), LSA R.S. 13:1571.1(C) and C.J.P. Art. 13(7) and (9), see State in the Interest of Lewis, 377 So.2d 1322, at 1323, 1324 (La.App. 1st Cir.1979)." State v. Edwards, 406 So.2d 1331, at pages 1339-1340 (La.1981), cert. den., 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982).
State v. Sanders, supra, a defendant again argued that the statement of a defendant who was just over seventeen years of age when the crime was committed should be protected by Dino. In disposing of this argument this court stated:
"The defendant misreads the intention of the court in the Dino decision. As the Louisiana Supreme Court later clarified in State v. Edwards, 406 So.2d 1331 (La. 1981), the protections of Dino extend only to those who the law defines as juveniles, that is those under seventeen years of age. With regard to criminal responsibility, the defendant was an adult in the eyes of the courts at the time of the offense and the confession." *195 State v. Sanders, 463 So.2d 1022, at page 1026 (La.App. 3 Cir.1985).
The jurisprudence discussed above makes it clear that the Dino decision does not apply to confessions given by defendants after reaching seventeen years of age. For this reason it is therefore not necessary to decide the question of whether or not the defendant's confession was obtained in violation of the standards set forth in Dino.
The second issue raised by defendant in contesting the admissibility of his confession is the effect of the apparent request for an attorney, at the February questioning, as it relates to the time of the defendant's March 20, 1987, confession. The case of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) is relied on by defendant as authority that defendant should have been given counsel on March 20, 1987, because he had earlier requested counsel on February 3, 1987. In Edwards, supra, the United States Supreme Court enunciated a "bright line" rule when it said:
"[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, at pages 484-485, 101 S.Ct. 1880 at pages 1884-1885, 68 L.Ed.2d 378, at pages 386-387 (1981).
Defendant argues that his second interrogation, after a month when no charges were pending with respect to him, was a police-initiated custodial interrogation. He contends that this infringed upon his earlier invoked right to counsel and that his confession should therefore have been ruled inadmissible because a waiver of his request for counsel could not be established by just showing that he responded to the second interrogation.
Edwards v. Arizona, supra, does not apply in the factual context of the case at bar. As the United States Supreme Court said in the Edwards opinion itself about the rule being set forth:
"We reconfirm these views and, to lend them substance, emphasize that it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." (Emphasis added.) Edwards v. Arizona, 451 U.S. 477, at page 485, 101 S.Ct. 1880, at page 1885, 68 L.Ed.2d 378, at page 383 (1981).
Similarly, the United States Supreme Court in Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), said of the Edwards rule:
"This was in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in Edwards was." (Emphasis added.) Oregon v. Bradshaw, 462 U.S. 1039 at page 1044, 103 S.Ct. 2830, at page 2834, 77 L.Ed.2d 405, at page 409 (1983).
This is further supported by examining the United States Supreme Court's motives for delineating the "bright line rule" of Edwards. In Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Supreme Court stated of the Edwards rule:
"In the absence of such a bright-line prohibition, the authorities through `badger[ing]' or `overreaching'explicit or subtle, deliberate or unintentional might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance. Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983); Fare v. Michael C., 442 U.S. [707], at 719, 99 S.Ct. [2560], at 2568 [61 L.Ed.2d 197]. Smith v. Illinois, 469 U.S. 91, at page *196 98, 105 S.Ct. 490, at page 494, 83 L.Ed.2d 488, at page 493 (1984).
Where a suspect is released from custody and is not interrogated again for a period of time, such as over one month in the case at bar, there is not a reasonable possibility of wearing down the suspect to the point that the suspect would waive his previously invoked right to counsel.
In the absence of application of Edwards, the Louisiana jurisprudence still requires that the suspect's asserted right to counsel be "scrupulously honored." State v. Salgado, 473 So.2d 84 (La.App. 5 Cir. 1985), writ den., 478 So.2d 1233 (La.1985); State v. Harper, 430 So.2d 627 (La.1983); State v. Thucos, 390 So.2d 1281 (La.1980); State v. Manning, 380 So.2d 46 (La.1980). The factors to be considered in determining whether the request for counsel was scrupulously honored are:
"(1) who initiates the further questioning; (2) the time delay between the original request and subsequent interrogation; (3) whether Miranda warnings were given before each interrogation; (4) whether waiver of rights forms were signed; and (5) whether or not pressures were asserted on the accused by the police between the time he invoked his right to counsel and the subsequent interrogation. State v. Harper, supra; State v. Shea, 421 So.2d 200 at 209 (La. 1982), [rev'd 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), rev'd on remand, 466 So.2d 449 (La.1985)]; State v. McCarty, 421 So.2d 213 (La.1982)." (Emphasis added.) State v. Salgado, 473 So.2d 84, at page 89 (La.App. 5 Cir.1985), writ den., 478 So.2d 1233 (La.1985).
The trial court considered the case of State v. Foley, 448 So.2d 731 (La.App. 5 Cir.1984) in determining whether defendant's request for counsel at the first interrogation was sufficient to prevent a second interrogation. In Foley, only five days had elapsed between the first interrogation, where counsel was requested, and the second interrogation, where the accused gave a voluntary statement, after being again advised and waiving his Miranda rights, and the court admitted the statement. The trial court also considered the case of State v. Harper, supra, where only two days elapsed between the first and second interrogation and the statement was held admissible.
No cases have been cited involving an interrogation where a request for counsel was made (assuming the request of Ms. Wells operates in defendant's behalf), and the police terminated the first interrogation and released the defendant for an extended period before the second interrogation. The trial judge looked at the time lapse between the two interrogations, the immediate termination of the first interrogation upon request for counsel for defendant and his release from custody, the Miranda warnings and rights waiver form signed by defendant at the second interrogation, and the lack of pressure on defendant in the interim time period and at the time of the second interrogation. The trial judge determined the confession was admissible. The admissibility of a confession in the first instance is a matter for the trial court and its judgment will not be disturbed unless not supported by the evidence. State v. Harper, supra; State v. Burkhalter, 428 So.2d 449 (La.1983).
A request for counsel followed by a termination of interrogation, a release from custody, and then a substantial period out of police custody, should not operate as a permanent bar to all further police-initiated interrogation. The fact that a request for counsel was made a month earlier would not preclude the defendant from changing his mind during the period between interrogations. It is well established that nothing in Miranda prevents an accused from changing his mind and giving a statement after he had previously exercised one of his rights, so long as the statement is voluntary and intelligently given. State v. Williams, 461 So.2d 1118 (La.App. 5 Cir. 1984); State v. Knowles, 444 So.2d 611 (La.1984); Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The defendant's rights were sufficiently protected by the Miranda warnings given at the second interrogation as evidenced by the signed rights waiver forms. Defendant *197 was fully aware that an invocation of his right to counsel at the second interrogation would be honored as it was at the first interrogation. For these reasons the trial court did not err in ruling the defendant's confession admissible.
Defendant argues that he did not request an attorney in March because the officers did not inform him, of his right to an attorney at that time. This is not believable in light of his acknowledgment by his signature on each document that clearly lists the right of an accused to have counsel at police interrogation. This argument also casts serious doubt on defendant's claim that he was browbeaten and coerced into signing these documents, especially when the time interval between his waiver of his Miranda rights and the confession was over 35 minutes. Although defendant and his mother contradicted the testimony of Corporal Vaughn, the testimony and evidence presented at trial supports the State's contentions that the confession given by defendant was made freely and voluntarily and meets the statutory requirements of LSA-R.S. 15:451. In determining whether sufficient evidence exists to support a ruling, Louisiana courts have adopted the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We find that the State presented evidence, which viewed in the light most favorable to the prosecution, permitted the trial court, as a rational factfinder, to conclude that the confession of the defendant was freely and voluntarily given.
For the foregoing reasons, the judgment of the trial court denying defendant's motion to suppress is affirmed.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).