974 A.2d 427 (2009)
408 N.J. Super. 188
STATE of New Jersey, Plaintiff-Appellant,
v.
John WESSELLS, Defendant-Respondent.
Docket No. A-1545-08T4
Superior Court of New Jersey, Appellate Division.
Argued March 18, 2009.
Decided July 9, 2009.
*428 Hilary L. Brunell, Executive Assistant Prosecutor, argued the cause for appellant (Paula T. Dow, Essex County Prosecutor, attorney; Ms. Brunell, on the brief).
John J. McMahon, First Assistant Deputy Public Defender, argued the cause for respondent (Yvonne Smith Segars, Public Defender, attorney; Mr. McMahon, of counsel and on the brief).
Before Judges STERN, RODRÍGUEZ and ASHRAFI.
The opinion of the court was delivered by
RODRÍGUEZ, A.A., P.J.A.D.
We granted the State's motion for leave to appeal from the grant of defendant John Wessells' motion to suppress a custodial statement to the police. The trial court granted a stay pending appeal. We reverse and remand for trial holding that, pursuant to both the federal and New Jersey Constitutions, a person who has asserted the right to counsel during a police custodial interrogation and is subsequently released may be interrogated again if the break in custody afforded a reasonable opportunity to consult an attorney.
These are the salient facts. On September 2, 2006, Sandy Bellush, Eric Jackson, and Brielle Simpkins were shot to death in Newark. Two others were also shot, but survived.
As a result of police investigation, co-defendant Raheem Clay, nicknamed "Rah," was arrested and charged with conspiracy to commit murder. The following day, September 3, 2006, shortly before 9:00 a.m., Newark Homicide Detective Murad Muhammad and Essex County Prosecutor's Detective Marquise Carter went to defendant's home and arrested him on a traffic warrant. He was taken to police headquarters. Defendant was orally advised of his Miranda[1] rights and provided with a written Miranda form. Defendant read and signed the form, waiving his rights. According to Muhammad, defendant did not invoke his right to remain silent or request a lawyer at the September 3, 2006 interview. The detectives questioned defendant about an August 24, 2006 incident, in which defendant was the victim of an assault. Muhammad also had *429 information that defendant had quarreled about money with Sandy Bellush. The interview concerning the August 24 incident was not recorded because defendant declined to give a formal taped statement.
Muhammad asked defendant if he had any information related to the September 2, 2006 triple homicide. Defendant denied any knowledge of the shootings, stating he only knew of the incident through newspaper accounts. However, he admitted that on August 24, 2006, he quarreled with Bellush over a car or money. Bellush's friends assaulted defendant. According to Muhammad, the interrogation was terminated. According to defendant, he requested a lawyer before continuing to answer any more questions, then the interrogation terminated. Defendant was released once he posted bail on the traffic warrants.
The police investigation continued. On September 11, 2006, one of the surviving victims identified defendant as a participant in the shootings. The following day, defendant was taken into custody in connection with the homicides and attempted murders.
On September 12, 2006, in a recorded statement, after Miranda warnings were given again, defendant waived his rights and agreed to give a statement. Defendant admitted his presence at the scene of the homicide, but denied responsibility for the shootings. He stated that "Nut" and "Rah-Rah," his codefendants, were also present. Defendant acknowledged that he was having a "little money situation" with Bellush. He reiterated that on August 24, 2006, he was "jumped" in a fight over money owed to Bellush.
Defendant was arrested and charged with: first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 & 11-3(a); purposeful or knowing murder by use of a handgun, N.J.S.A. 2C:11-3(a)(1)(2); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a handgun for unlawful purposes, N.J.S.A. 2C:39-4(a); first-degree attempted murder, N.J.S.A. 2C:5-1 & 11-3(a); second-degree aggravated assault, N.J.S.A. 2C:12-1(b); conspiracy to commit aggravated arson, N.J.S.A. 2C:5-2 & 17-1(a); and second-degree aggravated arson, N.J.S.A. 2C:17-1(a).
Defendant moved to suppress the September 12, 2006 statement. The judge held an evidentiary hearing on the motion. Defendant testified that on September 3, 2006, he was brought to police headquarters on a traffic warrant and asked about a homicide. He identified his signature on the Miranda waiver form but did not recall that the form made reference to the homicide of Sandy Bellush. He stated the form was blank when he signed it. Defendant acknowledged each of the rights with his initials, including the one pertaining to a lawyer.
According to defendant, he told the detectives that he did not know anything about a homicide and asked for a lawyer, at which point all questioning ceased. He did, however, provide the detectives with some information. He identified a telephone contact named "Rah," who had lived with one of the homicide victims in July 2006. He was asked about "being a victim" in an assault, but he refused to answer and requested a lawyer. Defendant then made bail on the warrant and was released the next day.
The judge suppressed the September 12, 2006 statement, but denied a motion to suppress the September 3, 2006 statement. The State moved for leave to appeal. We granted the motion. AM-136-08T4 (App. Div. November 21, 2008).
On appeal, the State contends:

*430 THE TRIAL COURT ERRED IN DISREGARDING DOCUMENTARY AND TESTIMONIAL EVIDENCE OF A WAIVER OF COUNSEL.
THE TRIAL COURT INCORRECTLY APPLIED THE LAW WHEN [IT] FOUND THAT A REQUEST FOR COUNSEL INVALIDATED A CONFESSION NINE DAYS LATER, AFTER A BREAK IN CUSTODY AND NEW MIRANDA WARNINGS.
We agree with the State's second point.
For the purpose of our analysis, we assume that defendant was in custody during the September 3 interrogation and that he asserted the right to speak to an attorney at that time. Nonetheless, we conclude that the judge should not have granted defendant's motion to suppress the September 12 statement to the police.
In Edwards v. Arizona, the United States Supreme Court held that "an accused,... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981). This holding, known as the "Edwards rule," is intended to prevent police from badgering a suspect in custody. The bright-line rule of Edwards was "designed to protect an accused in police custody from being badgered by police officers" in an effort to wear the suspect down and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance. Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405, 411 (1983).
Following a request for counsel, the Edwards rule applies to any interrogation, whether it pertains to the crime that prompted the initial interrogation or to a different crime. Arizona v. Roberson, 486 U.S. 675, 683-84, 108 S.Ct. 2093, 2099, 100 L.Ed.2d 704, 715 (1988). Moreover, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." Id. at 686, 108 S.Ct. at 2100, 100 L.Ed.2d at 716.
Edwards does not address whether this rule survives a break in custody. However, in a 1991 case, the Supreme Court suggested that Edwards would not apply where a break in custody occurred. The Court observed:
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), we established a second layer of prophylaxis for the Miranda right to counsel: Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," 451 U.S. at 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)which means, we have most recently held, that counsel must be present, Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial....
[McNeil v. Wisconsin, 501 U.S. 171, 176-77, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158, 167-68 (1991) (emphasis added).]
Even before McNeil, the federal circuit courts had held that a break in custody *431 vitiates the need for Edwards protection, provided that a defendant has an adequate opportunity to obtain counsel.
In Dunkins v. Thigpen, 854 F.2d 394, 397 (11th Cir.1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989), the Eleventh Circuit held that a one-day break in custody, following an assertion of the right to the assistance of counsel, was sufficient to overcome the Edwards rule prohibiting subsequent custodial interrogation. The court stated:
If the police release the defendant, and if the defendant has a reasonable opportunity to contact his attorney, then we see no reason why Edwards should bar the admission of any subsequent statements. A break in custody after the invocation of fifth amendment rights ends the need for the Edwards rule.
[Ibid.]
Thus, subsequent confessions obtained from a police-initiated interrogation are admissible if there has been an intervening break in custody, assuming compliance with Miranda. Ibid.
Other circuit courts had agreed, prior to the holding in McNeil, that it made little sense to establish a bright-line application of the Edwards rule without consideration of intervening factors such as a break in custody. In United States v. Skinner, 667 F.2d 1306, 1309 (9th Cir.1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983), it was held that Edwards protection does not apply where the suspect was not in continuous custody. This was followed by McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir.1987), which held that two breaks in custody severed any causal link between the initial unlawful interrogation and appellant's voluntary confessions.
After McNeil, several courts have relied on the highlighted provision of that opinion, "(assuming there has been no break in custody)," to hold that a break in custody defeated Edwards protection.
The Eighth Circuit held that a three-hour break in custody was sufficient because defendant "had ample opportunity to consult his family, friends, or a lawyer." United States v. Harris, 221 F.3d 1048, 1053 (8th Cir.2000).
In United States v. Bautista, 145 F.3d 1140, 1150 (10th Cir.), cert. denied, 525 U.S. 911, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998), the court stated:

Edwards is premised on the inherently coercive nature of custodial interrogation and is designed to prevent the authorities from badgering a suspect in custody after the suspect has invoked his Miranda right to have an attorney present during questioning. Therefore,... in order for Edwards to apply, the suspect must be in custody from the time he invokes his right to the time when the subsequent interrogation is initiated. If custody is broken, especially for a lengthy period of time, the inherently coercive nature of custody itself is diminished and there is little to no risk of badgering by the authorities. This is not to say that the police can circumvent Edwards by temporarily releasing a suspect for a short period of time and then reacquiring him. Whether a break in custody is sufficient to remove a suspect's request for counsel from the ambit of Edwards must be evaluated under the totality of the circumstances.
[Ibid. (citations omitted).]
See also Kyger v. Carlton, 146 F.3d 374, 380-81 (6th Cir.), cert. denied, 525 U.S. 1028, 119 S.Ct. 565, 142 L.Ed.2d 471 (1998); United States v. Barlow, 41 F.3d 935, 945-46 (5th Cir.1994), cert. denied, 514 U.S. 1030, 115 S.Ct. 1389, 131 L.Ed.2d 241 *432 (1995); United States v. Hines, 963 F.2d 255, 257 (9th Cir.1992).
Numerous state courts have articulated a similar approach. See People v. Storm, 28 Cal.4th 1007, 124 Cal.Rptr.2d 110, 121-23, 52 P.3d 52 (2002), cert. denied sub nom., Storm v. California, 537 U.S. 1127, 123 S.Ct. 899, 154 L.Ed.2d 812 (2003) (holding that a two-day break in custody did not preclude an encounter initiated by the police in the absence of counsel because a Miranda request for counsel applies only during continuous custody); State v. Norris, 244 Kan. 326, 768 P.2d 296, 302 (1989) (holding that defendant's Fifth Amendment right to counsel terminates when he is released from custody); State v. Alley, 841 A.2d 803, 809 (Me.), cert. denied sub nom., Alley v. Maine, 541 U.S. 1078, 124 S.Ct. 2425, 158 L.Ed.2d 992 (2004) (holding that, following a six-hour break, law enforcement officials may reinitiate interrogation in the absence of counsel as long as the defendant has had a reasonable opportunity to contact counsel); State v. Warren, 348 N.C. 80, 499 S.E.2d 431, 440-41 (N.C.), cert. denied sub nom., Warren v. North Carolina, 525 U.S. 915, 119 S.Ct. 263, 142 L.Ed.2d 216 (1998) (six-week break in custody); Commonwealth v. Gregory, 263 Va. 134, 557 S.E.2d 715, 723-24(Va.), cert. denied sub nom., Gregory v. Virginia, 537 U.S. 838, 123 S.Ct. 156, 154 L.Ed.2d 59 (2002) (twelve-day break in custody).
See also People v. Trujillo, 773 P.2d 1086, 1091-92 (Colo.1989); Gonzalez v. State, 449 So.2d 882, 886 (Fla.App.), rev. denied, 458 So.2d 274 (Fla.1984); Wilson v. State, 264 Ga. 287, 444 S.E.2d 306, 309(Ga.), cert. denied sub nom., Wilson v. Georgia, 513 U.S. 988, 115 S.Ct. 486, 130 L.Ed.2d 398 (1994); In re Wells, 532 So.2d 191, 195-97 (La.App.1988); Commonwealth v. Galford, 413 Mass. 364, 597 N.E.2d 410, 413-14 (1992), cert. denied sub nom., Galford v. Massachusetts, 506 U.S. 1065, 113 S.Ct. 1010, 122 L.Ed.2d 158 (1993); Willie v. State, 585 So.2d 660, 666-67 (Miss.1991); State v. Furlough, 797 S.W.2d 631, 640-41 (Tenn.Crim.App.1990); Tipton v. Commonwealth, 18 Va.App. 832, 447 S.E.2d 539, 540-41 (1994); State v. McKenzie, 197 W.Va. 429, 475 S.E.2d 521, 530, cert. denied sub nom., McKenzie v. West Virginia, 519 U.S. 1016, 117 S.Ct. 529, 136 L.Ed.2d 415 (1996).
Some courts have added a caveat that the release from custody must not be made in bad faith (i.e., done merely as an attempt to circumvent Edwards). See, e.g., State v. Bymes, 258 Ga. 813, 375 S.E.2d 41, 42 (1989) (noting that Edwards protection is defeated where there was "no indication appellee's release from custody was a mere ploy in order to seek another waiver").
Our inquiry, however, does not end at this point. The New Jersey Supreme Court has held that the application of safeguards in the federal and New Jersey Constitutions are not always coterminous, despite the congruity of the language. State v. Hunt, 91 N.J. 338, 344, 450 A.2d 952 (1982) (citing State v. Alston, 88 N.J. 211, 225-26, 440 A.2d 1311 (1981); State v. Johnson, 68 N.J. 349, 353, 346 A.2d 66 (1975); cf. State v. Schmid, 84 N.J. 535, 557, 423 A.2d 615 (1980) (holding that there are broader concepts of individual rights pursuant to the New Jersey Constitution)). Therefore, we must consider whether, in light of New Jersey's broader concept of individual rights, a break in custodial status results in a relaxation of the Edwards rule.
Here, we are strongly persuaded by the soundness of the reasoning at the core of these federal and state decisions, which has been summarized as follows:
"Once released, the suspect is no longer under the `inherently compelling pressures' of continuous custody where there is a reasonable possibility of wearing *433 the suspect down by badgering police tactics to the point the suspect would waive the previously invoked right to counsel. A break in custody between the first and second interrogations also provides the suspect the opportunity to speak with an attorney, family member or any person the suspect cares to consult without police constraints." We therefore adopt the premise that "a ... break in custody where the defendant has a reasonable opportunity to contact his attorney [while free of custodial pressures] dissolves an Edwards ... claim.'"
[People v. Storm, supra, 124 Cal.Rptr.2d at 122, 52 P.3d 52 (quoting from In re Bonnie H., 56 Cal.App.4th 563, 65 Cal. Rptr.2d 513, 525-26 (1997)) (internal citations and footnote omitted).]
Thus, in New Jersey, a person who has asserted the right to counsel during a police custodial interrogation and is subsequently released may be interrogated again if the break in custody afforded a reasonable opportunity to consult an attorney. Moreover, in order to determine whether the break in custody is sufficient to defeat Edwards protection, we adopt a totality-of-the-circumstances test, similar to the one in Bautista, supra, 145 F.3d at 1150.
Applying this standard pursuant to both the federal and New Jersey Constitutions, we hold that defendant's waiver of his rights on September 12, 2006 was valid and not precluded by the invocation of his right to counsel on September 3, 2006. Accordingly, the order suppressing the September 12, 2006 statement is reversed and the matter is remanded to the Law Division, Essex County for trial.
Reversed and remanded.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).